JOHN T. LAWRENCE *vs.* CITY OF CAMBRIDGE.

Middlesex. February 5, 1996. - April 8, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & FRIED, JJ.

*Governmental Immunity. Massachusetts Tort Claims Act. Negligence,*
Municipality, Police. *Municipal Corporations,* Liability for tort, Police.
*Practice, Civil,* Summary judgment.

In a civil action in which the plaintiff alleged that a city police department
negligently failed to protect him as a result of which he had been shot,
summary judgment was incorrectly ordered in favor of the municipality
where, on the uncontradicted materials submitted, there remained a
genuine issue of material fact whether the city's promise to protect the
plaintiff "when [he] closed [his] store at night" was explicit and specific
so as to fall within the provisions of G. L. c. 258, § 10 (*j*) (1), and thus
make the city liable. [410-413]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 3, 1993.

The case was heard by *Hiller B. Zobel*, J., on a motion for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Joseph P. Kittredge* for the plaintiff.

*Deborah R. Cautela*, Legal Counsel, for the defendant.

*Thomas J. Urbelis & Marilyn T. McGoldrick*, for the City
Solicitors and Town Counsel Association, amicus curiae,
submitted a brief.

FRIED, J. John T. Lawrence, the plaintiff, brought an ac-
tion in negligence against the city of Cambridge claiming that
its police department did not fulfil its promise to protect him.
A Superior Court judge dismissed the plaintiff's complaint,
reasoning that the promise by the city's police department
was not specific enough to satisfy the exception to the public
duty rule stated in G. L. c. 258, § 10 (*j*) (1) (1994 ed.). The
plaintiff appealed. We transferred the case to this court on
our own motion and now reverse.

## I

Although the city had submitted a motion to dismiss, the judge indicated in his memorandum and order that the parties agreed to treat the city's motion as one for summary judgment. See Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974) (if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment"); *White* v. *Peabody Constr. Co.,* 386 Mass. 121, 126-128 (1982). We, too, treat the city's motion as one for summary judgment.

Perhaps because the parties engaged in no discovery, the facts come to us primarily from one source, the plaintiff's affidavit. On June 12, 1991, the plaintiff was employed as a manager of Broadway Joe's, a liquor store in Cambridge. At approximately 8 P.M., shortly after he had closed the store for the evening and had entered his automobile, a man, later identified as Richard Kenney, held a gun to the plaintiff's head and demanded the money in a satchel that the plaintiff was holding. There were two other men with Kenney. The plaintiff gave the money to his assailants, and they fled.

Based on the plaintiff's identification of his assailants and of the gun, the Cambridge police arrested Kenney and his two accomplices. The plaintiff alleges in his complaint that the Cambridge police had known Kenney to be a very dangerous individual because of his extensive criminal record and the people with whom he associated. The next day, the plaintiff agreed to testify against his assailants at a grand jury hearing to be held approximately five days later, and, according to the plaintiff's affidavit, "the Cambridge Police promised to protect [the plaintiff] when [he] closed the store at night." The plaintiff asserts that in returning to work he relied on this promise. The Cambridge police department placed an officer at the liquor store at closing time for the next three nights, up to and including the night of June 16, 1991.

On the night of June 17, 1991, the plaintiff closed up the store and went outside expecting to see a police officer there. However, no officer was present. "After [the plaintiff] entered [his] vehicle a man approached and shot [him] in the face." The plaintiff had been scheduled to testify before a grand jury the next day. The Cambridge police department never told the plaintiff that it was going to stop protecting him or were unable to protect him on June 17, 1991.

On June 17, 1991, the Cambridge police held Kenney and the two men who had been arrested with him in custody. Kenney was eventually convicted of the robbery and served a term in prison.[1] Due to his injury, the plaintiff incurred approximately $40,000 of medical expenses. He has recovered $5,128.56 in compensation from the Commonwealth, pursuant to G. L. c. 258A (1994 ed.), for lost wages.[2]

The complaint alleges that the plaintiff had been shot as a result of the city's negligence. Although no single ground appears to have been dispositive, the judge dismissed the complaint because: (1) the durational aspect of the police department's assurance was not specific; (2) the plaintiff chose to leave the store rather than return inside and call the police once he realized that no officer was outside; and (3) the police department had no particular knowledge that the plaintiff's assailant was bearing down on the plaintiff that night.[3]

## II

The Massachusetts Tort Claims Act, G. L. c. 258 (1994 ed.) (Act), allows those with valid claims in tort to recover against governmental entities. See *George* v. *Saugus*, 394 Mass. 40 (1985). Prior to our decision in *Jean W.* v. *Commonwealth*, 414 Mass. 496 (1993), this court had precluded liability for otherwise valid claims if the plaintiff could not establish a special relationship between himself and the public employee. See, e.g., *Onofrio* v. *Department of Mental Health*, 408 Mass. 605, 609 (1990), *S.C.*, 411 Mass. 657 (1992). This so-called "public duty rule" provided governmental immunity where the government owed the plaintiff no duty different from the duty owed to the general public. See *Appleton* v. *Hudson*, 397 Mass. 812, 815 (1986). In *Jean W.* v. *Commonwealth, supra* at 499, 510-511 (Liacos, C.J., concurring),

[1]These last two statements were found in the city's unverified legal memorandum and were not otherwise in the summary judgment record.

[2]The city submitted an attested copy of the judgment in the G. L. c. 258A proceeding. The plaintiff does not dispute that he received this compensation.

[3]These last two grounds are not sufficient to justify summary judgment. The former presents an issue for the trier of fact as to the reasonableness of the plaintiff's response, assuming that the police had improperly departed from its assurance to him. The latter is simply irrelevant, if indeed the police may be taken to have offered protection at closing time against Kenney's associates.

*supra* at 514-515 (Wilkins, J., concurring with whom Abrams, J., joined), *supra* at 523 (Greaney, J., concurring), however, a majority of the court indicated that the public duty rule was inconsistent with the Act and "announce[d] [the court's] intention to abolish the rule." The Legislature responded by amending § 10 of the Act to include "a statutory public duty rule." *Carleton* v. *Framingham*, 418 Mass. 623, 627-628 (1994) (upholding the constitutionality of the amendment to § 10). See St. 1993, c. 495, § 67.[4] The relevant portions of this amendment read:

> "The provisions of sections one to eight, inclusive, shall not apply to: - . . .
>
> "(*h*) any claim based on the failure to establish a police department or a particular protection service, or if police protection is provided, for failure to provide adequate police protection, prevent the commission of crimes . . . but not including claims . . . as otherwise provided in clause (1) of subparagraph (*j*). . . .
>
> "(*j*) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortuous conduct of a third person, which is not originally caused by the public employer . . . . This exclusion shall not apply to:
>
> "(1) any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim . . . provided that the injury resulted in part from reliance on those assurances."

The city contends that § 10 (*h*) and (*j*) provide it immunity in this situation, and that the plaintiff has failed to allege facts that establish that the city made an "explicit and specific assurance" that it would provide the plaintiff protection on June 17, 1991, as he left the store. If § 10 (*j*) (1) does not apply, we agree that § 10 (*h*) and (*j*) provide immunity in this situation. The plaintiff does not contend otherwise.

---

[4]By St. 1993, c. 495, § 144, the amendment to § 10 (the relevant portion reprinted in the text) applies to this case.

We have not yet had the opportunity to interpret § 10 (*j*)
(1). See *Bonnie W.* v. *Commonwealth*, 419 Mass. 122, 126
(1994); *Carleton, supra* at 628-629 & n.5, and cases cited.
Neither "explicit" nor "specific" is defined in the statute. We
interpret the words in accordance with their plain meaning.[5]
See *Henry* v. *Board of Appeals of Dunstable*, 418 Mass. 841,
843 (1994). Although the meanings of these terms are similar,
we believe that by "explicit" the Legislature meant a spoken
or written assurance, not one implied from the conduct of the
parties or the situation, and by "specific" the terms of the as-
surance must be definite, fixed, and free from ambiguity.

As stated above, the city filed a motion to dismiss that was
treated as a motion for summary judgment. The plaintiff
argues that there is a genuine issue of material fact as to
whether the city's promise was sufficiently specific and ex-
plicit to satisfy (*j*)(1). See Mass. R. Civ. P. 56 (e), 365 Mass.
824 (1974) ("When a motion for summary judgment is
made . . . an adverse party . . . must set forth specific facts
showing that there is a genuine issue for trial"). The city
disagrees and explains that, even if all the allegations the
plaintiff makes in his affidavit are proved, he will not have
satisfied his burden at trial. The burden on a nonmoving
plaintiff, however, is not to prove his case at summary judg-
ment but to raise a genuine issue of material fact. If the
plaintiff has raised the possibility that there are facts from
which a reasonable trier of fact could conclude that the
promise was explicit and specific and the defendant has not
definitively foreclosed such a possibility by his own materials
on his motion for summary judgment, the plaintiff must be
given the opportunity to prove his case at trial. See *Smith* v.
*Suburban Restaurants, Inc.*, 374 Mass. 528, 529-531 (1978).

We hold that the plaintiff's affidavit is sufficient to raise a
genuine issue of material fact as to whether the city's promise
was explicit and specific. The promise made by members of
the Cambridge police department, as stated in the plaintiff's
affidavit, to the extent that it constitutes the complete promise,
was explicit. The judge, however, concluded that it was not
sufficiently specific. He ruled that the "[p]laintiff must be

[5]"Explicit" is defined as "characterized by full clear expression: being
without vagueness or ambiguity: leaving nothing implied." "Specific" is
defined as "characterized by precise formulation or accurate restriction."
Webster's Third New Int'l Dictionary 801, 2187 (1993).

taken to know that the presence would not extend indefinitely. In any event, [d]efendant made no specific statement as to duration of the so-called 'protection'." The city argues in addition that the terms of the statute were not met because the plaintiff does not identify who gave the assurance of protection and did not specify its terms. These additional objections do not persuade us: the assurance may be explicit and specific without an indication of which police official gave it — although the plaintiff's failure to identify that official may cast doubt on the factual accuracy of his claim. And the allegation that the city would provide the plaintiff protection "when [he] closed the store at night" certainly specifies some of the most important terms of the assurance — when and where. It would be unreasonable to insist that the police must have gone into greater detail into such matters as to which officers and how many would provide protection or how they would be deployed — for instance on foot or in a patrol car.

The real difficulty occurs just where the judge saw it: the duration of the protection. The durational element is far more crucial than these other issues of detail. Did the police promise to protect the plaintiff until the danger had subsided, until he had testified at the grand jury hearing, until the trial was over, or . . . forever? It might be argued that, as in an ordinary contract, where matters are left open the court may imply terms either that are reasonable or that may be gathered from the subsequent course of performance. See Uniform Commercial Code, G. L. c. 106, § 3-309 (1994 ed.) (reasonable time); G. L. c. 106, §§ 2-202 and 2-208 (1994 ed.) (course of dealing). But the language of the statute precludes the imposition of such implied terms. The plaintiff also asserts his reliance on the police department's promise as inducing his return to work. While § 10 (*j*) (1) requires "that the injury result[ ] in part from [the promisee's] reliance on [the] assurance[ ]," such reliance cannot supply the terms that cause the assurance to suffer from a lack of specificity at the time it was made.[6]

Whether or not the plaintiff may prevail at trial if he relies solely on facts asserted in his affidavit, we conclude that for

---

[6]Glannon, Liability for "Public Duties" Under the Tort Claims Act, 79 Mass. L. Rev. 17, 28 (1994) (suggesting that § 10 [*j*][1] applies to those "specific assurances which [the public officials] should realize that individual will rely upon").

purposes of summary judgment the plaintiff's unopposed allegation that the police promised him protection "when [he] closed the store at night," raises a genuine issue of material fact. The plaintiff's affidavit alleges a promise of protection for as long as Kenney or his companions posed a danger to the plaintiff. The plaintiff's affidavit is unopposed, thus the plaintiff's assertions must be taken as true, and the credibility of the plaintiff's statements is an issue for the trier of fact. It is also the case, however, that the very broad assurance the plaintiff alleges must be taken to refer only to protection in respect to this particular matter — and not extend, for instance, to protection from a disgruntled fellow employee or a person carrying a grudge because of some personal relationship.[7] We note also that if the police had withdrawn the promise, no further reliance on it would be warranted and by the terms of the statute the city's exposure to liability would cease.[8]

The case comes to us in an unfortunately abstract posture. The most minimal discovery by either party would very likely have resolved the difficulties. Summary judgment should not

---

[7]The city argues that the causal chain in the plaintiff's negligence case is broken by his failure to allege that the harm was foreseeable. See *Jean W.* v. *Commonwealth*, 414 Mass. 496, 512 (1993) (Liacos, C.J., concurring) (causation an element of plaintiff's case). We disagree. The plaintiff's uncontroverted assertions that the police knew of Kenney's dangerous nature, that he observed his assailant look for the police cruiser just before he attacked the plaintiff (alleged in a claim letter required by G. L. c. 258 [1994 ed.]), and the proximity of the assault to the grand jury hearing, are sufficient to withstand summary judgment on the issue of the foreseeability of the harm.

[8]The city cites *Piotti* v. *Commonwealth*, 370 Mass. 386, 387-388 (1976), for the proposition that the plaintiff's claim is barred because he has recovered under G. L. c. 258A (compensation for victims of violent crimes). *Piotti*, however, was decided before the enactment of the Massachusetts Tort Claims Act at a time when the law recognized sovereign immunity. In *Piotti*, the court held that "[i]n a situation where the Legislature has provided some relief to the victim, we will not limit the doctrine of sovereign immunity otherwise and, thus, override the Legislature's judgment." *Id.* at 387. Now that the Legislature has enacted the Tort Claims Act this reasoning does not apply. Absent an explicit preclusion of c. 258 claims should a person recover under c. 258A, it would be contrary to legislative intent to imply one.

have been granted.[9] Accordingly, we vacate the order of the Superior Court granting summary judgment to the defendant and remand the case for further proceedings consistent with this opinion.

*So ordered.*

[9]Both parties cite to us numerous cases from other jurisdictions. These cases are by and large distinguishable on their facts. But more importantly, none of them interprets a statute similar to G. L. c. 258, § 10 (*j*).