Doerfer, J.
Plaintiffs, Francis P. Foley and Barbara Foley, have brought a negligence action against Defendant, City of Boston (“the City”), pursuant to G.L.c. 258 (1994 ed.), the Massachusetts Tort Claims Act (“MTCA”). Plaintiffs allege that the City, through its employees, negligently failed to notify them of their son’s death within a reasonable time, causing them to suffer from emotional distress, anger, and loss of consortium. The City now moves to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6) on the grounds that 1) it had no special relationship with plaintiffs from which a duty to act arose and 2) even if such a duty existed, there is no causal connection between the City’s failure to act and plaintiffs’ alleged harm. For the reasons set forth below, the City’s motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
Plaintiffs, Francis and Barbara Foley, are the parents of John Foley (“John”). On September 16, 1995, Francis was the last person who saw John alive. Two days later, on September 18, 1995, the Boston Police Department found John dead in a car. At the time his body was discovered, John had on his person a Massachusetts Driver’s License, which stated his home address. Also on John’s person was a business card which identified his brother as a member of the Town of Westwood Police Department.
The City never notified plaintiffs that John’s body was found. They were in an intense period of panic while his whereabouts were unknown. On September 23, 1995, five days after the body was found, Donald Foley, John’s brother, contacted the City of Boston morgue and learned that John’s body had been there since September 18th.
On September 4, 1996, plaintiffs filed suit under G.L.c. 258, alleging that the City negligently failed to notify them of their son’s death within a reasonable length of time. As a result, plaintiffs claim, they suffered from emotional distress due to both their panic while John’s whereabouts were unknown and their *357 anger at the thought of his lying in a morgue without proper religious rites. They seek damages for emotional distress, anger, and loss of consortium.
DISCUSSION
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must take the allegations of the complaint, as well as any inferences which can be drawn therefrom in the plaintiffs’ favor, as true. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. “[The] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffls] can prove no set of facts in support of [their] claim which would entitle [them] to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Charbonnier v. Amico, 367 Mass. 146, 152 (1975); Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979).
“[A] complaint is not subject to dismissal if it would support relief on any theory of law.” Whitinsville Plaza, Inc., supra, at 89; see New Eng. Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 29 (1988) (when passing on a motion to dismiss, court must accord complaint a “generous reading”). Further, a complaint should not be dismissed simply because it asserts a new or extreme theory of liability or improbable facts. Bell v. Mazza, 394 Mass. 176, 183 (1985); New Eng. Insulation Co., supra, at 30; Jenkins v. Jenkins, 15 Mass.App.Ct. 934 (1983). All inferences should be drawn in the plaintiffs’ favor and the complaint “is to be construed so as to do substantial justice . . .” Ourfailian v. Aro Mfg. Co., 31 Mass.App.Ct. 924, 926 (1991).
A. Duty Under the MTCA
The MTCA permits governmental entities to be held liable for valid tort claims asserted against them. Lawrence v. Cambridge, 422 Mass. 406, 408 (1996). Under G.L.c. 258, §2, “[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances ...” By imposing liability on public employers, the MTCA accomplishes its purpose of “provid[ing] an effective remedy for persons injured as a result of the negligence of governmental entities in the Commonwealth.” Alake v. Boston, 40 Mass.App.Ct. 610, 613, rev. denied, 423 Mass. 1105 (1996), quoting Vasys v. Metropolitan Dist. Comm’n, 387 Mass. 51, 55 (1982).
While public employers are generally held liable for torts committed by their employees, the MTCA does provide governmental immunity for a limited group of claims enumerated under c. 258, §10. Section 10(j) immunizes governmental entities from “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.” If the conduct of a government employee falls within this “statutoiy public duty rule,” a plaintiff may not recover damages from the public employer under the MTCA. See Lawrence, supra, at 409.
The first issue in this case is whether the City is immune from liability under §10(j) for failing to notify plaintiffs of John’s death within a reasonable time.[2] The City contends that the MTCA bars plaintiffs’ claim because it had no special relationship with them from which a duty to notify them of John’s death arose. Thus, the City asserts, notifying the next-of-kin is a duty owed to the general public, not to specific individuals.
The City’s argument is correct only to the extent that it had no special relationship with plaintiffs which would bar it from invoking governmental immunity under the MTCA. When it amended the MTCA in 1993 and created the “statutoiy public duty rule” under §10(j), the Legislature also crafted an exception in which governmental immunity would not apply to, inter alia, “any claim based upon explicit and specific assurances of safety or assistance, beyond general representations that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injuiy resulted in part from reliance on those assurances.” G.L.c. 258, §10(j)(1). Therefore, the common law line of special relationship cases no longer apply in determining the scope of a governmental entity’s duties in tort actions. See Bonnie W. v. Commonwealth, 419 Mass. 122, 126 (1994).
Under the facts as alleged in the complaint, the exception to governmental immunity under §10(j)(1) is not applicable. Plaintiffs do not allege that the Boston Police Department made explicit or specific assurances of assistance in locating John or notifying them of his death. Nor do they state that they relied on any assurances made by the police. Consequently, the exception under §10(j)(1) is not a ground for holding the City liable.
However, the language of §10(j) suggests that imposing liability on the City is not necessarily foreclosed. See Singer Friedlander Corp. v. State Lottery Comm’n, 423 Mass. 562, 564 (1996), quoting Bronstein v. Prudential Ins. Co. of Am., 390 Mass. 701, 704 (1984) (“[t]he text [of a statute] must be afforded its plain meaning when it is clear and unambiguous”). A close examination of the language of § 10(j) reveals that public employers are immune from liability only if they or their employees do not originally cause harm to the plaintiff. See Joseph W. Glannon, Liability for “Public Duties" Under the Tort Claims Act: The Legislature *358 Reconsiders the Public Duty Rule, 79 Mass.L.Rev. 17, 26 (1994). On the other hand, if the public employer or employees originally do cause injury, §10(j) will not permit the governmental entity to escape liability. See id.
In this case, the facts alleged in the complaint are broadly stated so that one may infer that the City’s conduct directly caused plaintiffs’ damages. Although the City claims that plaintiffs’ claimed injuries were caused by the anguish all persons experience upon learning of a loved one’s death, one could reasonably infer from a fair reading of the complaint that plaintiffs’ damages were caused by the City’s failure to notify them of John’s death within a reasonable time. Plaintiffs do not claim that the City failed to intervene or interrupt forces set in motion by others which led to John’s death and their subsequent emotional distress. Rather, they claim a separate negligent course of conduct by failing to follow their own procedure for investigating deaths and notifying next-of-kin. Therefore, the City’s argument that it owed plaintiffs no duty upon which to base a claim for negligence must fail.
B. Emotional Distress Claim
The City next argues that plaintiffs have failed to state a claim for negligent infliction of emotional distress. To recover for negligent infliction of emotional distress, plaintiffs must prove: “(1) negligence: (2) emotional distress: (3) causation; (4) physical harm manifested by objective symptomatology: and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.” Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). The City contends that the complaint should be dismissed because there is no causal connection between its failure to notify plaintiffs and John’s death.
The Supreme Judicial Court has rejected emotional distress claims where the plaintiffs are unable to show that their distress arose from the defendant’s negligence. In Cohen v. McDonnell Douglas Corp., 389 Mass. 327 (1983), the Supreme Judicial Court rejected an emotional distress claim because the claimant’s decedent did not observe defendant’s negligence firsthand, but rather suffered merely from the anguish that one ordinarily experiences upon learning of the death or injury to a loved one. Id. at 343. Similarly, the Court dismissed a mother’s emotional distress claim for the death of her two-month-old infant in Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 738 (1982), because her injuries did not arise from observing or experiencing the effects of her physician’s negligent conduct in the delivery room; rather, the evidence demonstrated that her distress arose only after the baby’s death. Id. at 789. However, plaintiffs’ claims are distinguishable from these cases.
The gravamen of the complaint is that plaintiffs’ emotional distress was caused by the City’s failure to notify them of John’s death. They do not assert that their emotional distress arose solely from their lack of knowledge of John’s whereabouts and subsequent discovery of his untimely death. Rather, they allege that the City’s inaction caused them to first panic during the five days John’s body was in the morgue. Plaintiffs further allege that they experienced anger and shock at the thought of John lying in the morgue without religious rites or services as a result of the City’s negligence. Because plaintiffs assert that it is the City’s conduct which at least in part caused their injuries, the allegations in their complaint for emotional distress are sufficient to survive a motion to dismiss.
C. Loss of Consortium Claim
Finally, plaintiffs have brought a claim for the loss of the consortium of their son. This claim must fail. Under G.L.c. 231, §85X (1994 ed.), ”[t]he parents of a minor child or an adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally responsible for causing such injury” (emphasis added). In this case, plaintiffs do not allege that the City is responsible for their son John’s death; they merely claim that the Ciiy negligently failed to notify them in a timely fashion that their son’s dead body had been recovered. Nor would it be fair to infer that the City was negligent towards their son since he was already dead when his body was found in his car. Therefore, plaintiffs’ claim for loss of consortium must be dismissed.
ORDER
For the foregoing reasons, it hereby ORDERED that the City’s motion to dismiss with respect to the claim for emotional distress is DENIED. It is further ORDERED that the City’s motion to dismiss with respect to the claim for loss of consortium is ALLOWED.

 Plaintiffs correctly argue that G.L.c. 258, §10(b) is an unavailable ground for governmental immunity under the circumstances of this case. Under § 10(b), public employers are not liable for “any claim based upon the exercise or performance of the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, within the scope of his office or employment, whether or not the discretion involved is abused.”
The Boston Police Department’s duty to notify plaintiffs of John’s death is clearly mandatory. Rule 205, Sec. 8A(4) of the Boston Police Department’s Rules and Procedures explicitly states that in sudden death situations ”[i]t is imperative that officers at the scene of a sudden death make every effort to obtain information concerning the next-of-kin of the deceased. Every reasonable means available shall be used to notify a relative or friend of the death of the deceased .. . The duty supervisor is responsible for such notification.” Where, as here, public employees lack discretion because their conduct is prescribed by a statute, regulation, or established agency practice, immunity under the discretionary function exception is not available. Harry Stoller and Co. v. Lowell, 412 Mass. 139, 141 (1992).