Gants, J.
On September 15, 1995, Leominster Police Officer Thomas R. Kent was shot in the line of duty by John J. MacNeil and permanently disabled from his injuries. Officer Kent, his wife, and his two children filed suit on May 28, 1998 against the defendants, the Commonwealth of Massachusetts and the Massachusetts Parole Board (collectively, “the Commonwealth”), under the Massachusetts Tort Claims Act (“the Act”), G.L.c. 258, §2, alleging that the defendants’ gross negligence in releasing MacNeil on parole and failing subsequently to make any attempt to reassert parole jurisdiction over him after he violated the terms of his parole caused MacNeil to be left on the street where he could do harm to Officer Kent.
The Commonwealth moves to dismiss the complaint under Mass.R.Civ.P. 12(b)(6) on the grounds that the Parole Board’s decisions were “discretionary functions” for which claims are barred under the Act, c. 258, §10(b), and that causation could not be established between the defendants’ alleged breach of duty and the shooting of Officer Kent. After hearing, this Court denied the motion to dismiss on January 12, 1999. On January 21, 1999, the Supreme Judicial Court issued its decision in Brum v. Town of Dartmouth, 428 Mass. 684 (1999), which resolved a number of issues concerning the Act that were unresolved when the motion to dismiss was decided.[1] In light of the Brum decision, the Commonwealth moves this Court to reconsider its denial of the motion to dismiss. After reconsideration, the motion to dismiss remains DENIED.
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the factual allegations of the complaint and all reasonable inferences favorable to the plaintiff which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). The issue is whether the facts alleged, generously construed in favor of the plaintiff, state a valid legal claim that would warrant relief on any theory of law. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). “[The] complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979) (“[A] complaintis notsubjeetto dismissal if it would support relief on any theory of law.”).
THE ALLEGATIONS IN THE COMPLAINT
The plaintiffs allege in their complaint that MacNeil in 1969 was sentenced to life in prison on two counts of murder, with concurrent terms of 10-15 years, 3-5 years, and 2V2-5 years on other counts charging, respectively, assault and battery with intent to rob, assault by means of a dangerous weapon, and unlawful carrying of a shotgun. On April 27, 1977, MacNeil was transferred from MCI Walpole to the Norfolk Pre-Release Center. He escaped from the Center and committed additional crimes. He was re-apprehended and, in March 1978, was convicted of escape, possession of burglarious tools, and breaking and entering in the nighttime. On August 16, 1979, MacNeil was transferred to NCCI Gardner, from where he escaped again on December 10, 1979. He was re-captured in Canada roughly one year later and returned to MCI Walpole on January 30, 1981. He was subsequently convicted of this second escape. On October 7, 1982, after having been transferred to MCI Norfolk, he injured himself when pipe bombs he was illegally assembling exploded. He later was convicted of possession of expío- *2 sive devices. After injuring himself with explosives at MCI Norfolk, he was transferred back to MCI Walpole, where he remained until May 24, 1985, when he was transferred to SECC, a medium security facility. For unknown reasons, he was returned to MCI Walpole, a maximum security prison, on June 7, 1985.
On January 28, 1985, following his first Parole Board hearing, he was denied parole. He had his second Parole Board hearing roughly one year later, and was again denied parole on January 24, 1986. At that time, a panel of the Parole Board wrote, “Subject said that he did not want to leave Walpole under any circumstances other than outright release. (No moves to lower security.) Didn’t seem to want to do anything to get himself out.” On July 14, 1986, the full Parole Board denied him parole, writing “Subject still in maximum security: Board looking for movement to lower security, pre-release plan and solid record of accomplishment while incarcerated.” However, on January 22, 1987, even though MacNeil was still in maximum security, had no pre-release plan, and had not demonstrated a solid record of accomplishment, a panel of the Parole Board recommended that he be paroled to a Canadian deportation warrant. On April 6, 1987, the Parole Board paroled MacNeil into the custody of the Immigration and Naturalization Service (“INS”) for deportation to Canada, with only two conditions: that he report by mail quarterly and not return to the United States. On April 28, 1987, he was deported to Canada.
MacNeil violated the terms of his parole by returning to the United States and was arrested for the parole violation on September 11, 1987. However, on January 14, 1988, the Norfolk County Superior Court ruled that MacNeil could not be found in violation of his parole because the Parole Board had transferred jurisdiction over him to the INS and no longer had jurisdiction over him. MacNeil v. Massachusetts Parole Board and Michael Maloney, Civ. No. 87-2640 (January 14, 1988) (Mathers, J.). The Court found that, by paroling MacNeil to the INS rather than to Canada under G.L.c. 127, §97(b), the Parole Board had surrendered MacNeil to the authority of the INS. Id. at 3. As a result of this decision, MacNeil was transferred to the INS, who deported him again to Canada.
MacNeil returned to the United States and was again taken into custody by the INS on July 12, 1994. A United States Magistrate determined that he was a danger to the safety of persons in the community and refused to grant him bail, but he was released from federal custody on June 7, 1995 after it was determined that he was a United States citizen. On June 9, 1995, MacNeil was arraigned in West Roxbuiy District Court for having violated a restraining order that his wife had obtained against him. The Court denied his release on personal recognizance, finding him to be dangerous.[2]
At or about June 9, 1995, the Massachusetts Parole Board decided to attempt to regain parole custody over MacNeil. However, it did not act on this decision and did nothing to reassert parole jurisdiction over MacNeil before he shot Officer Kent on September 15, 1995. MacNeil died during this shoot-out.
The plaintiffs contend that the Commonwealth was grossly negligent (1) in releasing MacNeil on parole in 1987; (2) in the manner in which it released him, that is, releasing him to the INS for deportation, thereby losing the ability to violate his parole if he returned to the United States; and (3) by failing to act to reassert parole custody over MacNeil after his release from INS custody in June 1995.
DISCUSSION
The Commonwealth argues in its motion for reconsideration that this complaint must be dismissed for three reasons:
1. The claims are barred by the discretionary function immunity in the Act, G.L.c. 258, §10(b), which excludes from the Act, “any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused;”
2. The claims are barred by the third party conduct immunity in the Act, G.L.c. 258, §10(j), which excludes from the Act “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer;”[3] and
3. The chain of causation between the alleged grossly negligent decision to grant parole to MacNeil in 1987 and MacNeil’s subsequent shooting of Officer Kent in 1995, as a matter of law, is too remote and speculative to permit a finding of causation.
This Court will address each argument in turn.
I. The Discretionary Function Immunity under G.L.c. 258, §10(b).
This Court must apply a two-step test in determining whether the plaintiffs’ claim is foreclosed by the discretionary function immunity of § 10(b). Harry Stoller & Co. v. Lowell, 412 Mass. 139, 141 (1992). First, it must determine whether the Parole Board had any discretion to do or not to do what the Kents claim caused them harm. Id. “[I]f the governmental actor had no discretion because a course of action was prescribed by a statute, regulation, or established agency practice, a discretionary function exception to governmental liability has no role to play in deciding the case.” Id. Second, it must determine whether the discretion at issue is of the kind for which § 10(b) provides immunity — whether it is “discretionary con *3 duct that Involves policy making or planning.” As a general rule, when the governmental conduct involves a “high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability.” Id. at 142 quoting Whitney v. Worcester, 373 Mass. 208, 218 (1977). “But, when that conduct ‘involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities.’ ” Id. at 142 quoting Whitney v. Worcester, 373 Mass. at 218.
The determination of whether a particular decision was within the discretionary function immunity of § 10(b) depends on the facts of each case. Dobos v. Driscoll, 404 Mass. 634, 651 (1989), Since “reality is preferred over empty theorizing in adjudging claims of immunity under §10,” Allen v. City of Boston, 44 Mass.App.Ct. 679, 682 (1998), the defendant has a difficult burden on a motion to dismiss on § 10(b) grounds, since it must establish beyond a doubt that the plaintiff can prove no set of facts that would place the conduct outside the discretionary function immunity. See Nader v. Citron, 372 Mass. at 98; Coughlin v. Department of Correction, 43 Mass.App.Ct. 809, 815-17 (1997) (lack of discovery places court in “unfortunately abstract posture” in considering motion to dismiss). The Commonwealth cannot satisfy that formidable burden here.
Not every claim based upon the parole of a prisoner from the custody of the Commonwealth warrants dismissal under the discretionary function immunity. G.L.c. 258, §10(i), which was enacted after §10(b), provides that immunity under the Act shall attach to:
any claim based upon the . . . parole ... of any person, including but not limited to a prisoner . . . from the custody of a public . . . employer . . . , unless gross negligence is shown in allowing such . . . parole . . .
c. 258, §10(i). In Brum, the Supreme Judicial Court declared:
Subsection (i), like the other subsections of §10, creates an immunity from suit; the provision regarding cases of gross negligence in releasing an individual may be brought invoking the exception to § 10(1) only if no other immunity under §10 bars the claim. Tire immunities provided by §10 operate in the alternative; even if one immunity contains an exception that would permit a claim to be brought, that claim is barred if any of the other immunities apply.
Brum v. Town of Dartmouth, 428 Mass. at 697. If all parole decisions were immunized by § 10(b), the discretionary function immunity, then there would be no need at all for §10(i). Moreover, if all parole decisions were immunized by §10(b), then the gross negligence exception to the immunity under §10(i) is a meaningless illusion, because there is no such exception to § 10(b). Unless we are to believe that the Legislature, in amending the Act in 1993 to add §10(i), accomplished nothing except to mislead litigants into believing that they may have a claim for gross negligence by the Parole Board, then we must recognize that § 10(b) does not provide blanket tort immunity to all parole decisions.
The plaintiffs allege that the Parole Board’s grossly negligent conduct in releasing MacNeil falls outside the discretionary function immunity of § 10 (b) on three separate factual grounds. First, they contend that the Parole Board violated its statutory duty under G.L.c. 127, §130 by failing to find, before releasing MacNeil, that “there is a reasonable probability that, if [he] were released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society,” and by failing to make a written record of its decision indicating the reasons for his release. See G.L.c. 127, §130; Harry Stoller & Co. v. Lowell, 412 Mass. at 141. See also Coughlin v. Department of Correction, 43 Mass.App.Ct. at 815-16 (complaint alleging negligence by Restrictive Integration Review Board in release of sexually dangerous person may not be dismissed because of discretionary function immunity of §10(b) when complaint alleged that the Board failed to carry out previously established policies or plans).
Second, they contend that, by transferring jurisdiction of MacNeil to the INS after his release on parole, the Parole Board violated its statutory duty to ensure that any prisoner on parole “remain .. . subject to the jurisdiction of such board” until the term of imprisonment expires or is terminated. See G.L.c. 127, §130; Harry Stoller & Co. v. Lowell, 412 Mass. at 141; Coughlin v. Department of Correction, 43 Mass.App.Ct. at 815-16.
Third, they contend that the Board violated its own established agency practice by releasing MacNeil on January 22, 1987 when none of the reasons for denying parole to him on July 14, 1986 — "looking for movement to lower security, pre-release plan and solid record of accomplishment while incarcerated" — had been addressed. See Coughlin v. Department of Correction, 43 Mass.App.Ct. at 815-16 In view of the plaintiffs’ allegations and the absence of any record, this Court cannot conclude beyond a doubt that the plaintiffs can prove no set of facts that would place the Parole Board’s conduct outside the discretionary function immunity of §10(b).
II. The Third Party Conduct Immunity under G.L.c. 258, §10(j).
In Brum, the Supreme Judicial Court labored to make sense of the “interpretive quagmire” of G.L.c. 258, §10(j). Brum, 428 Mass. at 692. Since §10(j) grants immunity to “any claim based on an act or failure to act to prevent... the harmful consequences *4 of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer,” c. 258, §10(j), the Court in Brum had to determine when “a condition or situation” is “originally caused by the public employer,” thereby placing the claim outside the immunity granted by this section. Brum at 692. The Court struggled to give meaning to the phrase, “originally caused by the public employer,” so that it did not swallow up the immuniiy intended in §10(j) but did not itself become meaningless surplusage. Id. at 692-96. The outcome of this struggle was the express endorsement of the Court’s earlier holding in Bonnie W. v. Commonwealth, 419 Mass. 122 (1994).
In Bonnie W., the plaintiff had been sexually assaulted by a person on parole release who was employed as a maintenance worker in the trailer park where she lived. Id. at 123. She sued the Commonwealth under the Tort Claims Act on two separate theories. First, she alleged that her assailant’s parole officer had been negligent in recommending her assailant for employment at the trailer park, thereby giving him access to the plaintiff inside her mobile home. Second, she alleged that the parole officer was negligent for failing properly to supervise her assailant. Id. at 125; Brum at 695. The Bonnie W. Court held that §10(j) barred her claim regarding the parole officer’s negligent failure to supervise, but did not bar her claim alleging the parole officer’s negligence in recommending the assailant for employment at the trailer park. Bonnie W. at 125; Brum at 696. Under the Brum Court’s interpretation of this decision, the parole officer’s failure to supervise “can be characterized only as failure to prevent the assailant from being in a position to attack the plaintiff,” and therefore was barred under §10(j). Brum at 696. The parole officer’s negligent recommendation of employment, in contrast, “was an affirmative act on the part of the officer that created a situation in which a sexual predator held a job giving him access to the keys to every trailer in the park,” and was not barred under §10(j). Id.
Applying this distinction to the case at bar, the plaintiffs’ complaint can fairly be read to allege that the Parole Board’s release of MacNeil in 1987 was analogous to the parole officer’s recommendation of employment in Bonnie W. Here, as in Bonnie W„ the parole authorities had committed affirmative acts that created a situation in which a violent predator was left on the street where he could do violence do most anyone, especially to a police officer who seeks to halt his violations of the law. MacNeil’s parole release, like the parole officer’s recommendation in Bonnie W., can be said to have originally caused MacNeil’s violent conduct because it placed him in a position where he was free to commit violence. Stated differently, the complaint in the instant case can be read to allege, not that the Parole Board failed to prevent the harm that MacNeil inflicted upon Officer Kent, but that it affirmatively placed MacNeil in a position — on the street— where he could do harm. See Brum at 696. Since this latter interpretation of the complaint is reasonable and since that interpretation falls outside the scope of the immunity in §10(j), then dismissal of the complaint under §10(j) is not warranted.
The Commonwealth, perhaps anticipating this result, asks this Court to dismiss what it characterizes as plaintiffs’ “second theory” — that the Parole Board was grossly negligent in failing to act to return MacNeil to custody in 1995 after it was determined that he was a United States citizen. The Commonwealth is correct that its failure to act can hardly be characterized as an “affirmative act” and, by itself, could not fall outside the immunity provided by §10(j). However, the plaintiffs do not themselves characterize the 1995 failure to act as a second theory, and do not allege this gross negligence as a separate count in the complaint. While it is doubtful that a jury may find the Commonwealth liable based on the Parole Board’s failure to act in 1995 alone, its 1995 conduct certainly reflects a failure to correct the error that the Parole Board allegedly made in 1987 when it released MacNeil and transferred jurisdiction over him to the INS, and therefore is properly among the allegations in the complaint.
III. The Chain of Causation.
The Commonwealth argues that the causal link between MacNeil’s 1987 release on parole and the 1995 shooting of Officer Kent is too remote and speculative as a matter of law to constitute proximate cause. It rests this argument entirely on the Supreme Judicial Court’s recent language in King v. Commonwealth, which is part of the Brum decision. 428 Mass. 684, 689 (1999). In King, a judge released Dalton Simpson on personal recognizance and, three months later, he shot and killed Police Officer Berisford Anderson. Id. at 686. Anderson’s estate sued the Commonwealth and the Middlesex County District Attorney’s Office claiming that his wrongful death was proximately caused by the prosecutor’s grossly negligent release of Simpson from custody. Id. at 689. The Court found that the prosecutor did not have the authority to allow or disallow the release of a criminal defendant; while he could make a recommendation, only a judge, clerk, bail commissioner, or master in chancery has the authority to set bail or release a defendant on personal recognizance. Id. The Court ruled that the most the plaintiff could ever hope to prove in this case was that, if the prosecutor had not recommended personal recognizance, the judge would have set bail beyond the reach of Simpson, resulting in Simpson remaining in custody. Id. The Court concluded:
Such a chain of causation is too long and contains too many speculative links to connect the assistant district attorney’s action to the violence that ulti *5 mately befell Anderson. Any effect the assistant district attorney’s actions may have had in effectuating Simpson’s release and subsequent killing of Officer Anderson is simply too remote to serve as a source of liability under the Act.

Id.

The Commonwealth asks this Court to read this language as holding that the chain of causation between a negligent release and the subsequent shooting of a police officer three months later was too speculative as a matter of law to find proximate cause. It then argues that, if the chain of causation is too speculative when the shooting occurred only three months after the negligent release on bail, then the chain must be even more speculative when, as here, the shooting occurred eight years after the negligent release on parole. The Commonwealth, however, misreads the meaning of this language in King.
The chain of causation that the Supreme Judicial Court found too long and speculative was the relationship between the prosecutor’s conduct and the ultimate release of Simpson, since the prosecutor had the power only to make a bail recommendation, not to set bail himself. It did not declare a general rule that causation may never be established whenever a third party who was injured or killed by a released prisoner or defendant brings a claim under the Tort Claims Act based on the grossly negligent release of that prisoner or criminal defendant. Nor should this Court interpret this language so as to create a general rule, since such a rule would significantly alter the delicate balance that the Legislature sought to create when it enacted the §10 immunities and the exceptions to those immunities. Such a general rule of causation would effectively bar all such negligent release claims, even those where the Parole Board acted affirmatively and with gross negligence in contravention of established law. The Supreme Judicial Court, in the same opinion where it so judiciously sought to give meaning to the various terms in §10(j), would not, without explanation, have rendered §10(i) meaningless.
The instant case is easily distinguished from King since the Parole Board, unlike a prosecutor, had the power to release MacNeil and the gross negligence claim focuses on the alleged abuse of that power. In contrast with King, no chain of causation is needed to link the conduct of the public employee with the release of the prisoner; the Parole Board made its decision and ordered MacNeil’s release. The issue of causation focuses only on whether the release of MacNeil in 1987 was a substantial contributing factor in causing the shooting of Officer Kent. Here, there is certainly “but for” causation — but for the decision by the Parole Board to release MacNeil and transfer jurisdiction to the INS, MacNeil, who was serving a life sentence, would have been in prison on the day Officer Kent was shot. Whether there is proximate causation remains to be seen, but this Court cannot find beyond a reasonable doubt that the plaintiffs can prove no set of facts that would support a finding of proximate causation, especially considering MacNeil’s criminal record at the time of his release on parole. In the absence of such a finding, dismissal is not warranted. See Nader v. Citron, 372 Mass. at 98. See also Coughlin v. Department of Correction, 43 Mass.App.Ct. at 812 (denying motion to dismiss claim that negligent release of sexually dangerous person caused murder five months later).
Finally, the Commonwealth claims that the Superior Court’s decision in 1988, finding that the Parole Board no longer had jurisdiction over MacN-eil, was an intervening event that broke any chain of causation. The fatal flaw in this argument is that Judge Mathers’ ruling was based on the manner in which the Parole Board chose to release MacNeil in 1987; he found that the Parole Board no longer had jurisdiction over MacNeil only because the Parole Board in 1987 had transferred jurisdiction of Mac-Neil to the INS. Since this transfer of jurisdiction allegedly violated the Parole Board’s statutory duty under G.L.c. 127, §130, Judge Mathers’ decision may be viewed as the logical consequence of the Parole Board’s grossly negligent conduct, not as an independent intervening cause.
ORDER
For the reasons stated above, after reconsideration, the defendants’ motion to dismiss remains DENIED. The defendants’ motion for further stay of discovery is also DENIED.[4]

 The Supreme Judicial Court in Brum also decided another unrelated case, King v. Commonwealth, where other issues regarding the interpretation of the Tort Claims Act were addressed.

 Although the complaint is silent, it appears that MacNeil was ultimately released on bond by the Court.

 This argument, at least in this form, was not made in the Commonwealth’s motion to dismiss but only in its motion for reconsideration. This Court nonetheless will treat it as if it had been presented in the motion to dismiss.

 At the January 12, 1999 hearing, where this Court initially denied the defendants’ motion to dismiss, this Court ordered that no discovery was to be due or scheduled for ten days to provide the Commonwealth with the opportunity to seek review (and a stay) from the Appeals Court. The Commonwealth instead sought reconsideration of the denial of the motion to dismiss. Although no further stay of discovery has been ordered by this Court, the Commonwealth has apparently refused to provide the requested discovery pending the outcome of its motion for reconsideration. Since roughly three months have passed without discovery since this Court’s original ruling, no further stay is warranted.