Sosman, J.
Plaintiff Hazel Cooper brought the present action against her landlord, the Somerville Housing Authority, to recover for injuries sustained when she was bitten by a dog owned by another tenant. The Housing Authority has moved for summary judgment on the ground that G.L.c. 258, §10(j) bars plaintiffs negligence claim against it. For the following reasons, defendant’s motion for summary judgment is ALLOWED.
Facts
Plaintiff Hazel Cooper resides at 20C Memorial Road, Apartment 26 in Somerville. The apartment complex in which she lives is owned and operated by the Somerville Housing Authority. On December 17, 1997, Cooper was visiting the apartment of Sabrina *411 Eldred, another tenant in the same housing complex. During that visit, Cooper was bitten by a pit bull that Eldred kept in her apartment.
The leases governing both Cooper’s and Eldred’s tenancy contained a list of requirements under the heading “TENANT RESPONSIBILITIES.” One of the items on that list was the requirement that the tenant “keep no pets except in accordance with the SHA Family Housing Pet Policy. ” At the time of these events, the Pet Policy provided: “As required by state regulations, no pets will be allowed to be owned, kept or harbored in the family housing projects.” The Pet Policy went on to list four exceptions (for fish, birds, animals used to aid the handicapped, and pets kept in the project prior to 1981), and then specified: “Owning, keeping, or harboring pets in family housing projects is a violation of the lease unless the pet falls into one of the four exceptions.”
The leases in question did not have specified dates on which the leases would automatically terminate. Rather, the lease required the tenant to submit periodically a “Continued Occupancy Form” updating her information with respect to household income and composition. Based on that information, the Housing Authority would annually redetermine the amount of rent to be charged, the appropriate unit size for that tenant’s household, and the tenant’s continued income eligibility.
The leases also provided that the Housing Authority “may terminate” the lease for specified reasons, including the tenant’s “(c)reation or maintenance of a serious threat to the health or safety of other residents” or the tenant’s “[ substantial violation of any term, condition or covenant of this lease.” In order to terminate the lease for any reason other than nonpayment of rent, the Housing Authority was first required to take a series of procedural steps, including written notice, a conference with the tenant and the tenant’s representative, and a hearing and decision under the grievance procedure (if requested by the tenant). Only if the decision of the hearing panel upheld the termination could the Housing Authority proceed with a Notice to Quit, and the lease termination date could not occur until at least thirty days after issuance of the Notice to Quit.
Eldred’s completion of her Continued Occupancy Form and the redetermination of her rental amount, unit size and income eligibility would have been done on or about October 22, 1997 (the anniversary date of the Eldred lease), approximately two months prior to the December 17, 1997 incident involving plaintiff. Plaintiff contends that the Housing Authority knew, as of that October 1997 redetermination, that there was a pit bull being kept in the Eldred apartment but that the Housing Authority failed to take any action to enforce the Pet Policy or the terms of the lease as against the Eldred family.
Discussion
The Somerville Housing Authority is a “public employer” covered by the Massachusetts Tort Claims Act. G.L.c. 258, §1; Ayala v. Boston Housing Authority, 404 Mass. 689, 703 (1989). The Act insulates public employers from liability for “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.” G.L.c. 258, §10(j).
Plaintiff contends that, by “renewing” Eldred’s lease in the fall of 1997 at a time when it allegedly knew about the animal in the Eldred apartment, the Housing Authority “originally caused” the dangerous condition now complained of. Plaintiff relies on Bonnie W. v. Commonwealth, 419 Mass. 122 (1994), in which a probation officer’s positive recommendation concerning a probationer’s background resulted in the probationer getting a job as ¿ maintenance worker at a trailer park. That employee then used his position to gain access to the plaintiffs trailer and assault her. The court held that where the probation officer’s alleged misrepresentations as to the probationer’s background were what got him the job, the probation officer had “originally caused” the dangerous condition — i.e., had placed the probationer in a position that gave him keys to every trailer home in the park. Plaintiff Cooper contends that the Housing Authority’s “renewal” of Eldred’s lease, with knowledge that Eldred had a pit bull, similarly “caused” the dangerous situation that led to the dog bite incident two months thereafter.
Assuming (without deciding) that granting a new lease to someone known to be in violation of her prior lease would “originally cause” the dangerous condition stemming from that violation, there is no lease “renewal" in the present case. Eldred’s lease had not expired by its own terms. The only thing that had happened was the annual review of Eldred’s income and family size to determine her financial eligibility and proper unit size. Under the lease, review of that updated information may have given the Housing Authority the ability to adjust Eldred’s rent (up or down), to move her family to a different size unit, or to commence proceedings to terminate the lease for failure to meet income eligibility requirements. However, unless and until the Housing Authority successfully completed the procedural steps to terminate the tenancy, the lease itself did not expire on the annual redetermination date. There was no new tenancy for the Housing Authority to “create.” The Housing Authority did not, by merely conducting its annual size and income eligibility review in the fall of 1997, “create” the dangerous condition of the presence of a pit bull at the housing complex.
All the Housing Authority did was fail to exercise its option to commence termination proceedings on ac *412 count of Eldred’s violation of her existing lease. Failure to prevent a third party’s conduct (here, failure to prevent the Eldreds from keeping a dangerous animal) can not be recast as “originally causing” the condition that led to that conduct, as that approach would effectively abolish the very immunity that §10(j) intended to create. See Brum v. Town of Dartmouth, 428 Mass. 684, 693, 696 (1999). Where, as here, the gravamen of plaintiffs negligence theory is that the Housing Authority failed to take action to force the Eldreds to get rid of their dangerous pet, the claim is barred by §10(j).
In the alternative, plaintiff Cooper contends that the lease provisions and the policy against pets bring her claim within the exception to §10(j) for cases involving reliance on assurances of safety. To come within this exception, plaintiffs claim must be based upon “explicit and specific assurances of safety or assistance, beyond general representation that investigation or assistance will be or has been undertaken, made to the direct victim or a member of his family or household by a public employee, provided that the injury resulted in part from reliance on those assurances.” G.L.c. 258, §10(j)(1). The term “explicit” assurances means that plaintiff must have relied on “a spoken or written assurance, not one implied from the conduct of the parties or the situation.” Lawrence v. City of Cambridge, 422 Mass. 406, 410 (1996). To qualify as a “specific” assurance, “the terms of the assurance must be definite, fixed, and free from ambiguity.” Id. As a result, this exception applies only to the “truly exceptional case where direct and explicit assurances are given to a particular person quite apart from the normal carrying out of officials’ routine duties.” Barnes v. Metropolitan Housing Assistance Program, 425 Mass. 79, 87 (1997).
As drafted, the lease makes no representations or promises on the part of the landlord to the effect that a pet-free environment will be maintained. Rather, the lease lists this item as a responsibility of the tenant. It is a prohibition directed at tenants, not an assurance given to them. There is no assurance by the landlord that other tenants will in fact comply with their obligations at all times, nor is there any promise as to how the Pet Policy will be enforced. The lease lists termination as a remedy that the Housing Authority “may” pursue in the event that a tenant is found to have violated his or her lease, but there is no promise with respect to whether or when that remedy will be pursued. Nor, in light of the procedural protections given to tenants under the lease, could the lease possibly assure residents that other tenants violating the Pet Policy would in fact be evicted. Eldred’s lease could not be terminated without first giving the required notice, holding the required conference, and obtaining a favorable decision from the grievance hearing panel. Thus, the lease not only does not assure the tenant that enforcement action will be taken against offending tenants, but it could not be read even to guarantee the results of any enforcement actions that were undertaken.[1]
At best, plaintiff could argue that the lease requirements prohibiting tenants from keeping pets on the premises and the landlord’s option to commence termination proceedings against tenants who did keep unauthorized pets gave rise to an implied assurance that plaintiff would not encounter pets in other tenants’ apartments. Assurances that are merely “implied from the conduct of the parties or the situation” are not the kind of “explicit and specific assurances” required to meet the §10(j)(1). Lawrence v. City of Cambridge, 422 Mass. 406, 410 (1996).
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendant.

 Even after a hearing panel decision in favor of the Housing Authority, the tenant’s lease could not be terminated for another month. Given the time frames necessary to complete the procedural steps and the thirty-day grace period after successful completion of those steps, there would, even with aggressive enforcement action undertaken immediately and pursued to a successful conclusion, be a considerable delay before the offending tenant and her pet could be forcibly removed from the premises.