## Bonnie W. *vs.* Commonwealth.

Worcester. May 3, 1994. - December 9, 1994.

Present: Liacos, C.J., Wilkins, Abrams, Nolan, Lynch, O'Connor, & Greaney, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Statute*, Retroactive effect. *Negligence*, Public employee. *Due Process of Law*, Retroactive application of statute. *Commonwealth*, Liability for tort, Officers and employees. *Actionable Tort. Practice, Civil*, Summary judgment.

General Laws c. 258, § 10, as amended by St. 1993, c. 495, § 57, was applicable to abolish a plaintiff's then-pending claim against an employee of the Commonwealth (a parole officer) for his negligence in supervising a paroled rapist, who while on parole assaulted the plaintiff. [125-126]

This court stated that the only public duty rule it intends to apply is the legislated public duty rule, G. L. c. 258, § 10, as amended by St. 1993, c. 495, § 57. [126]

A tort action based on the theory that the Commonwealth's employee, a parole officer, contributed to the plaintiff's injury by recommending a paroled rapist's continued employment at a mobile home park where the plaintiff lived and by misrepresenting the parolee's criminal record, which unreasonably exposed the plaintiff to the risk she would be assaulted by the parolee, was not barred by the 1993 amendment to the public duty rule, G. L. c. 258, § 10 [126-127]; nor did the parole officer's conduct in the circumstances involve a discretionary function within the meaning of G. L. c. 258, § 10 (*b*), so as to warrant immunity from liability [127]; nor did G. L. c. 258, § 10 (*i*), have any applicability to bar the action where the claim was based on negligence of the parole officer, not on the granting of parole [127-128].

In a civil action, summary judgment was incorrectly entered for the defendant where it did not demonstrate that the plaintiff had no reasonable expectation of proving an essential element of her case. [128]

Civil action commenced in the Superior Court Department on June 29, 1990.

The case was heard by *John C. Cratsley*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Roger J. Brunelle* for the plaintiff.

*Frank A. Smith, III*, Special Assistant Attorney General, for the Commonwealth.

O'CONNOR, J. The plaintiff alleges in her complaint that she was sexually assaulted in her mobile home which was located on leased space in a privately owned trailer park. The complaint further states that the assault was committed by Robert G. Elliott, who at that time was employed by the owners of the park as a maintenance man, having been recommended for such employment by Felix Claxton, who was employed by the Commonwealth as a parole officer. Claxton, the complaint alleges, knew that Elliott had a criminal record, including rape convictions, but nevertheless negligently recommended to the park management that Elliott be hired. The complaint also asserts that Claxton negligently supervised Elliott during his employment and negligently recommended his continued employment at the mobile home park.

A judge in the Superior Court allowed the Commonwealth's motion for summary judgment and the plaintiff appealed. We transferred the case to this court on our own initiative. Then, after the parties had filed their briefs here, the Legislature enacted St. 1993, c. 495, §§ 57 and 144, amending G. L. c. 258, the Massachusetts Tort Claims Act, and the parties, at our invitation, filed supplemental briefs addressing the effect and applicability to this case of the new legislation. We now reverse the judgment below.[1]

In a memorandum of decision, the judge in the Superior Court recited the following facts about which there appears to be no controversy. Elliott was released on parole January 21, 1987, from a twenty-five to thirty year sentence for rape

---

[1]The plaintiff has argued that the Commonwealth's motion for summary judgment was not timely filed in compliance with Superior Court Standing Order 1-88 and that therefore the Superior Court was without jurisdiction to allow the motion. We reject that argument. A rule providing that late filed motions may be disregarded by the court is not the equivalent of a rule that would require such a result.

and a concurrent ten to fifteen year sentence for robbery. Those sentences began October 28, 1964. Elliott was also serving an eight to twelve year sentence and a concurrent sentence for two counts of rape, which sentences began April 2, 1981. On January 21, 1987, Elliott met with Claxton, his parole officer, and Claxton determined that Elliott should be on "maximum supervision," which required Claxton to visit Elliott's home at least once a month and to have at least one monthly telephone conversation or visit with him.

On February 13, 1987, Elliott informed Claxton that he had been hired as a maintenance man at a trailer park in Brookfield. Early that month, the Brookfield police chief was introduced to Elliott at the trailer park. Thinking that he recognized Elliott, the police chief returned to the police station where he saw Elliott's photograph and a description of his crimes and sentences on the bulletin board. The police chief then brought David Machesney, a trailer park employee, to the police station to see the photograph and the posted information regarding Elliott. The police chief told Machesney that he did not think Elliott should be working at the trailer park. Then, on February 17, Machesney had a telephone conversation with Claxton, the substance of which is in dispute and is discussed below.

Following the disputed conversation, Elliott retained his job at the trailer park. According to a record kept by Claxton, Claxton visited Elliott on May 21, 1987, at Elliott's home in the trailer park. Claxton's next communication with Elliott was on July 1, 1987, more than forty days after his last prior communication. On July 3, the judge's memorandum states, the plaintiff "was the victim of an attempted sexual assault by Elliott." Not stated in the memorandum, but established for summary judgment purposes by materials on file in the case, see Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), is that the assault took place in the plaintiff's mobile home at the trailer park where Elliott was employed. Before going to bed on July 3, the plaintiff locked the doors of her mobile home. In connection with his employment, Elliott had

keys to all the units in the park. Sometime after 10 P.M. Elliott entered the plaintiff's mobile home and assaulted her.

As we have indicated, the summary judgment materials do not establish the content of the February 17 telephone conversation between Claxton and Machesney. Indeed, they demonstrate controversy in that regard. According to Claxton's deposition, he identified himself as Elliott's parole officer, but told Machesney nothing about Elliott's criminal record except to confirm that he was on parole. According to Machesney's deposition and Machesney's employer's answers to interrogatories in connection with a companion case, however, Claxton made several misrepresentations about Elliott's criminal record, one of them being that Elliott's girl friend had been the complainant in the second rape case, that the conviction was under appeal, and that Elliott's conviction was likely to be reversed. According to that version of the telephone conversation, Claxton expressed the opinion that Elliott had been rehabilitated and was not dangerous, and that it would be nice for Elliott to be given a chance.

The plaintiff's case is based on two significantly different theories of negligence. The first theory is that, by not complying with several Parole Board rules, including his failure to meet with Elliott once a month, Claxton did not properly supervise Elliott. The second theory is that Claxton was negligent in recommending Elliott's continued employment at the trailer park and in giving incorrect information in support of that recommendation resulting in Elliott's having access to the plaintiff inside her mobile home. We shall conclude that, in view of St. 1993, c. 495, § 57, which added clauses (*e*) to (*j*) to G. L. c. 258, § 10, and St. 1993, c. 495, § 144, which made that amendment applicable to "all claims . . . as to which an appeal is pending," the plaintiff's first theory of negligence is no longer viable, but that summary judgment for the Commonwealth as to the second theory is inappropriate and reversal is required.

General Laws c. 258, § 10, as amended by St. 1993, c. 495, § 57, provides in relevant part: "The provisions of sections one to eight, inclusive, shall not apply to: - . . . (*j*)

any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." It is clear that the plaintiff's claim based on a theory of Claxton's negligent failure to supervise Elliott and to thereby prevent Elliott from gaining access to the plaintiff's mobile home where the alleged assault occurred, is barred by § 10 (*j*) if St. 1993, c. 495, § 144, making the amendment retroactive to cases such as the present one, is constitutional. When the parties' supplemental briefs were filed, this court had not yet decided *Carleton* v. *Framingham*, 418 Mass. 623 (1994). In that case, we held that "the retroactive application of the amendment to abolish the plaintiffs' claims against the town of Framingham does not deny the plaintiffs due process of law in violation of the State or Federal Constitutions." *Id.* at 634. Our decision in *Carleton* is conclusive with respect to the present plaintiff's claim based on negligent supervision. That claim is barred.

The plaintiff's second theory of negligence liability, that Claxton contributed to the plaintiff's injury by negligently recommending Elliott's continued employment at the trailer park and misrepresenting Elliott's criminal history to park management, is a different matter. That claim is not barred by the 1993 amendment to G. L. c. 258, § 10, the only public duty rule we shall now apply. We do not intend to have applicable both the legislated public duty rule and a common law public duty rule that might be applicable when the legislated public duty rule is inapplicable. The plaintiff's second theory of negligence is viable now and also would have been before the 1993 amendment. See *Onofrio* v. *Department of Mental Health*, 408 Mass. 605, 610 (1990), *S.C.*, 411 Mass. 657 (1992). In our *Onofrio* opinion, discussing the basis for affirming a judgment for the plaintiff, we reasoned as follows:

"The DMH employees owed Onofrio a duty of care, not because they were employed to protect persons such as Onofrio and failed to do so, but because, by taking action that exposed Onofrio to risk, they were bound, as any other person would be, to act reasonably. The employees' duty was no different than it would have been had the employees been acting merely as private individuals. Their duty is grounded in the general rule that one who takes action ordinarily owes to everyone else who may be affected thereby a duty to act reasonably."

*Id.* at 610. Here, too, the plaintiff's claim that Claxton negligently recommended Elliott's employment at the trailer park and gave the employer misleading information in support of his recommendation can be the basis of the Commonwealth's liability. The rule 56 (c) materials would warrant a properly instructed jury's concluding in this case that, by taking action that exposed the plaintiff to risk, Claxton was bound, as any other person would be, to act reasonably, and that he violated that duty to the detriment of the plaintiff.

Pursuant to G. L. c. 258, § 10 (*b*), the Commonwealth is immune from liability for its employees' conduct involving a "discretionary function." However, a properly instructed jury in this case would be warranted in finding that Claxton's conduct did not involve a discretionary function within the meaning of § 10 (*b*). As we said in *Carleton* v. *Framingham, supra* at 626, "[d]iscretionary acts and decisions warranting immunity must be based on considerations of planning and public policy." See *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 146 (1992). Claxton's asserted activities would not constitute planning and public policy.

General Laws c. 258, § 10 (*i*), as amended by St. 1993, c. 495, § 57, provides that the provisions of §§ 1-8, inclusive shall not apply to a "claim based upon the release, parole, furlough or escape of any person, including but not limited to a prisoner, inmate, detainee, juvenile, patient or client, from the custody of a public employee or employer or their agents, unless gross negligence is shown in allowing such release, pa-

role, furlough or escape." The Commonwealth argues that the plaintiff's claim is based on a granting of parole and is therefore controlled by § 10 (*i*). We disagree. The plaintiff's claim is not based on the granting of parole. It is based on the alleged negligent activity of a parole officer after parole was granted. Section 10 (*i*) has no application to this case.

A "party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). The Commonwealth has not made the demonstration required for summary judgment in its favor. Therefore the judgment for the Commonwealth is reversed and this case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*