Wendy WILLHAUCK, Paul Willhauck, and Paul and Wendy Willhauck, as parents and next best friends of Bryan Willhauck, a minor, Plaintiffs,

v.

TOWN OF MANSFIELD, Town of Mansfield School Committee, all of its members in their capacity as school committee members, Ray Hurley, individually and in his capacity as Town of Mansfield School Psychologist, Karin Randolph, individually and in her capacity as Town of Mansfield Special Education Director, Edward Rosa, individually and in his capacity as principal of Mansfield High School, Richard Linney, Robert V. Linney, father of defendant Richard Linney, Nancy C. Linney, mother of defendant Richard Linney, and Paul Medeiros, Defendants.

No. 99–CV–11291–PBS.

United States District Court, D. Massachusetts.

Sept. 5, 2001.

---

Laurence E. Sweeney, Palmisano & Sweeney, Allston, MA, Silva C. Fido Rudman, Law Office of Michael A. Rudman, P.C., Fall River, MA, Frank H. Spillane, Spillane & Mrowka, South Easton, MA, for plaintiffs.

Wendy Willhauck, Mansfield, MA, pro se.

Leonard H. Keston, Kurt B. Fliegauf, Katherine R. Bowden, Brody, Hardoon, Perkins & Keston, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

This sad case arises out of a brutal attack by a student with severe behavioral problems on plaintiff, another student, after school on a nearby field behind the high school. Having suffered severe brain damage, the plaintiff, together with his parents, sued the school committee members, the school psychiatrist, the special education director, the principal, and the municipality, alleging that they violated his due process rights under 42 U.S.C. § 1983, and acted negligently in failing to supervise the assailant who had a past history of violence. Defendants have moved for partial summary judgment.

For the reasons stated below, the defendants' motion for partial summary judgment is *ALLOWED*.

## I. BACKGROUND

The facts set forth below are undisputed, unless otherwise noted.

During the 1995–96 school term, plaintiff Bryan Willhauck ("Bryan") was a fourteen-year-old student at Mansfield Middle School. Bryan was enrolled in the middle school's program for students with special needs.

Richard Linney ("Linney") was a student at Mansfield High School. Upon arriving at Mansfield High School during the 1995–96 term, Linney was placed in restrictive program designed for students with serious behavioral disorders. Under the terms of the Students Preparing for Re–Integration ("SPRINT") program, Linney was required to be "100% supervised," which included restroom visits, lunches, and use of school hallways between classes. The terms of the SPRINT program do not expressly require Linney to be supervised during after-school activities, nor is there any evidence that school officials made a practice of extending the 100% supervision requirement to such activities. However, there are instances where students (not necessarily those in the SPRINT program) have been disciplined for conduct occurring at dances and other non-mandatory after-school activities.

Linney's placement in the SPRINT program was evaluated and approved by a team of school personnel which included defendant Ray Hurley ("Hurley"), the school psychologist. During the evaluation and approval process, Hurley and the other team members learned of an incident at King Philip High School where Linney had allegedly threatened another student with some kind of weapon, possibly a knife. Hurley stated in his deposition that the team considered the incident during their

evaluation, but found that it was not serious enough to warrant Linney's exclusion from the SPRINT program. There is no evidence in the record that, prior to January 6, 1996, Linney's conduct in the SPRINT program was marked by any threatening or violent behavior.

On January 6, 1996, after the end of the regular school day, Linney and another student in the SPRINT program, Paul Medeiros ("Medeiros"), were supposed to board a school bus for a hockey game. At some point, however, the two older boys left the supervision of school employees and caught up with Bryan in a field behind the high school.[1] Then, as Medeiros looked on, Linney attacked Bryan, knocking him to the ground and repeatedly kicking him in the forehead. It is not clear from the record what provoked this attack; what is clear from the record, however, is that Bryan was brutally assaulted and sustained serious injuries. As a result of the blows to the head, Bryan's frontal sinus wall was badly fractured. He was forced to undergo surgery in which portions of his scalp were peeled back and metal plates and screws were inserted in his skull to replace the obliterated sinus wall. Bryan now has a permanent closed head injury, a large scar from ear to ear, and chronic headaches.

Following the attack, Linney was apparently found delinquent in the juvenile justice system for the attack on Bryan. There is some dispute whether Linney was merely placed on probation or whether he was required to serve a term of incarceration in the custody of the Massachusetts Department of Youth Services. In any event, Linney returned to Mansfield High School and (remarkably) was never disciplined by school officials.

The plaintiffs, Bryan and his parents, filed a ten-count complaint in state court against defendants Town of Mansfield, Town of Mansfield School Committee, Ray Hurley (the Mansfield school psychologist), Karin Randolph (the Mansfield Special Education Director), Edward Rosa (the principal of Mansfield High School), Richard Linney, Robert and Nancy Linney (Richard Linney's parents), and Paul Medeiros.[2] The case was subsequently removed to federal court pursuant to 29 U.S.C. § 1441(b). The public defendants—the Town of Mansfield, Town of Mansfield School Committee, Ray Hurley, Karin Randolph, and Edward Rosa—have brought the present motion for summary judgment on Counts I (violation of 42 U.S.C. § 1983) and III (negligence) of the complaint.

## II. ANALYSIS

### A. Summary judgment standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

---

1. Although the field is not school property, it has occasionally been used for school activities such as football games.

2. In addition to the negligence and substantive due process claims that are the subject of this motion, the complaint alleges claims for: violation of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1454, and the state analog, Mass.G.L. ch. 71B, §§ 1–14 (Counts II and IV); intentional infliction of emotional harm against Richard Linney and

Ray Hurley (Count V); assault and battery against Richard Linney (Count VI); strict liability for the willful acts of a minor under Mass.G.L. ch. 231, § 85 (Count VII); negligence against Paul Medeiros (Count VIII); attorney's fees under the Handicapped Children's Protection Act of 1986, 20 U.S.C. § 1415(e)(4)(B) (Count IX); and violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 7941 (Count X).

al fact and that the moving party is entitled to judgment as a matter or law." *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed R. Civ. P. 56(c)). To prevail on summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. *See Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies this requirement, the burden shifts to the non-moving party to establish the existence of at least one factual issue that is both genuine and material. *See LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To successfully oppose summary judgment, the non-moving party "may not rest upon mere allegation or denials of his pleading," but must set forth specific facts showing that there is a genuine issue for trial. *LeBlanc,* 6 F.3d at 841 (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Rogers,* 902 F.2d at 143 (quoting *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505) (citations omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour,* 63 F.3d at 36.

## B. 42 U.S.C. § 1983

The plaintiffs assert a constitutional claim under 42 U.S.C. § 1983 alleging that the defendants violated Bryan's substantive due process rights by placing Linney in the SPRINT program and failing to supervise him. As the plaintiffs acknowledge, the availability of a § 1983 claim arising from injuries caused by the intentional tortious conduct of third parties is greatly curtailed by the Supreme Court's decision in *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

■ As the Court in *DeShaney* stated, "the Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation." *Id.* at 202, 109 S.Ct. 998. "[T]he Due Process Clause ... was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" *Id.* at 196, 109 S.Ct. 998 (quoting *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)). "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* It follows from this that the government is under no general constitutional duty to protect individuals from the harmful conduct of third parties. *See id.* at 197, 109 S.Ct. 998

■ There are, however, two exceptions to the general rule which must be addressed here. The first exception applies where the state has assumed custody over an individual and, by reason of the deprivation of his liberty, the individual is unable to care for himself. *Id.* at 199, 109 S.Ct. 998. In such instances, the State assumes an affirmative duty to care for the individual. *See id.* at 198–99, 109 S.Ct. 998 (citing *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Youngberg v. Romeo,* 457 U.S. 307, 314–25, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)). The second exception applies where the government affirmatively acts to increase the threat of harm to the injured party. *See id.* at 201–02, 109 S.Ct. 998.

## 1. Special relationship doctrine

█ The defendants argue that they are entitled to summary judgment on the substantive due process claim because Bryan was not in the sort of custodial special relationship that would give rise to an affirmative duty to protect him from the tortious conduct of third parties.

Minors such as Bryan are compelled to attend school by law. *See* Mass.G.L. ch. 76, § 1. Parents who fail to enroll their children in school may be prosecuted and fined, *see id.* § 2, as may those who induce a minor to be unlawfully absent from school, *see id.* § 4. Nonetheless, almost every federal court to have faced the issue has held that, because parents still maintain primary responsibility for the child, compulsory school attendance does not create the sort of special relationship that would trigger heightened protection under the due process clause. *See D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1372 (3d Cir.1992) (en banc), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412, 1415 (5th Cir.1997) (en banc); *Doe v. Claiborne County,* 103 F.3d 495, 510 (6th Cir. 1996); *J.O. v. Alton Cmty. Unit Sch. Dist. 11,* 909 F.2d 267, 272 (7th Cir.1990); *Dorothy J. v. Little Rock Sch. Dist.,* 7 F.3d 729, 732 (8th Cir.1993); *Maldonado v. Josey,* 975 F.2d 727, 731 (10th Cir.1992), *cert. denied,* 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); *Wyke v. Polk County Sch. Bd.,* 129 F.3d 560, 569 (11th Cir.1997). The Supreme Court, in dictum, has hinted that it would also reach a similar conclusion. *See Vernonia Sch. Dist. v. Acton,* 515 U.S. 646, 655, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) ("[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect' ....") (cit-ing *DeShaney,* 489 U.S. at 200, 109 S.Ct. 998).

This fairly cramped application of the special relationship doctrine has, however, also been the object of criticism. *See Middle Bucks,* 972 F.2d at 1377–84 (Sloviter, C.J., dissenting); *id.* at 1384 (Becker, J., dissenting); *Johnson v. Dallas Ind. Sch. Dist.,* 38 F.3d 198, 203 n. 7 (5th Cir.1994) (Jones, J.), *cert. denied,* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995); *id.* at 204–09 (Goldberg, J., dissenting); *Maldonado,* 975 F.2d at 733–35 (Seymour, J., concurring). *See generally* Adam M. Greenfield, Note, *Annie Get Your Gun 'Cause Help Ain't Comin': The Need for Constitutional Protection from Peer Abuse in Public Schools,* 43 Duke L.J. 588 (1993); Deborah A. Colson, Note, *Safe Enough to Learn: Placing an Affirmative Duty of Protection on Public Schools under 42 U.S.C. Section 1983,* 30 Harv. C.R.-C.L. L.Rev. 169 (1995); Susanna M. Kim, Comment, *Section 1983 Liability in the Public Schools after Deshaney: The "Special Relationship" Between School and Student,* 41 UCLA L.Rev. 1101 (1994).

The First Circuit has yet to establish a firm rule. It has, however, expressed its reluctance to follow its sister circuits in holding without qualification that public schools owe their students no constitutional duty to protect:

> [W]e are loathe to conclude now and forever that inaction by a school toward a pupil could never give rise to a due process violation. From a commonsense vantage, [the plaintiff] is not just like a prisoner in custody who may be owed a broad (but far from absolute) "duty to protect." But neither is she just like the young child in *DeShaney* who was at home in his father's custody and merely subject to visits from busy social workers who neglected to intervene. For limited purposes and for a portion of the

day, students are entrusted by their parents to the control and supervision of teachers in situations where—at least as to very young children—they are manifestly unable to look after themselves. *Hasenfus v. LaJeunesse,* 175 F.3d 68, 72 (1st Cir.1999) (arising out of a gym teacher's failure to supervise a despondent student who attempted suicide, despite a rash of suicides in the school). The court in *Hasenfus* instead assumed that a school may owe students a limited duty to protect, but held that a violation of such duty would "require pungent facts." *Id.* Indeed, the court stated that, to be actionable, a school's dereliction of duty would have to approximate conduct "so extreme as to 'shock the conscience.'" *Id.* (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 846–47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) and *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). *Accord Canty,* 54 F.Supp.2d at 72 (applying shocks-the-conscience standard to allegation that school required student to attend class under the supervision of a teacher who had sexually assaulted her).

In this case, the constitutional duty to protect, if any, likely terminated at the end of the regular school day when the custodial relationship ended, before Linney's assault on Bryan took place. *See Leffall v. Dallas Ind. Sch. Dist.,* 28 F.3d 521, 529 (5th Cir.1994); *Brum v. Town of Dartmouth,* 428 Mass. 684, 702, 704 N.E.2d 1147 (1999). In addition, the conduct of the defendants does not rise to the egregious or conscience-shocking level that might permit liability under § 1983. Taken in the light most favorable to the plaintiffs, the record evidence would show only that the defendants exercised poor judgment by accepting Linney for the SPRINT program and that they failed to supervise Linney at a time during which they had not explicitly committed themselves to do so. This conduct, even if proven, does not

rise to the level of a constitutional violation under the principles announced by the First Circuit in *Hasenfus* which concluded: "Substantive due process is not a license for judges to supersede the decisions of local officials and elected legislators on such matters." 175 F.3d at 74.

■ Even under the more generous substantive due process standard usually reserved for prison cases, the plaintiff would still not be able to establish a violation of § 1983. In order to establish liability, the plaintiffs would have to show that the defendants acted with "deliberate indifference" to an imminent violation of the plaintiff's rights. *Id.* at 72; *see also Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Supreme Court has emphasized that in this context "deliberate indifference entails something more that mere negligence ....." *Farmer,* 511 U.S. at 835, 114 S.Ct. 1970. Instead, the public official must "know[ ] of and disregard[ ] an excessive risk to ... health or safety ....." *Id.* at 837, 114 S.Ct. 1970. In the present case, the plaintiffs have produced no evidence that the defendants were actually aware of any specific threat or danger that Linney imminently posed to Bryan. Thus, even assuming the school owed a narrow constitutional duty to protect Bryan, the plaintiffs have failed to adduce the sort of evidence that would permit liability under § 1983.

### 2. State-created danger doctrine

■ The plaintiffs place heavy emphasis upon the so-called state-created danger doctrine. *See DeShaney,* 489 U.S. at 201–02, 109 S.Ct. 998. Liability under the doctrine is available only where "[a] government employee, in the rare and exceptional case, affirmatively acts to increase the threat of harm to the claimant

or affirmatively prevents the individual from receiving assistance." *Frances–Colon v. Ramirez,* 107 F.3d 62, 64 (1st Cir. 1997) (citations omitted). Even where the government has created or markedly increased a risk of harm, no violation of substantive due process occurs unless "the behavior [is] conscience-shocking or outrageous." *Hasenfus,* 175 F.3d at 73.

Here, the plaintiffs allege that the defendants' conduct that created the danger to Bryan was the admission of Linney into the SPRINT program. Such conduct, even if seriously negligent, is a far cry from the type of government action that is sufficiently outrageous, uncivilized, or intolerable to trigger substantive due process constraints. *See id.* at 73–74 (holding that reprimanding student and sending her alone to a locker room where she attempted suicide did not violate due process under state-created danger theory); *Graham v. Independent Sch. Dist. No. I–89,* 22 F.3d 991, 994 (10th Cir.1994) (holding school did not create an unconstitutionally hazardous situation "by placing the aggressor and victim in the same location"). *Compare Canty,* 54 F.Supp.2d at 72 (finding plaintiff stated· due process claim where school administrators, with knowledge that a teacher sexually assaulted his student, placed the student back in the same teacher's supervision). "In most every circuit court decision imposing § 1983 liability because the State affirmatively created or enhanced a danger, 'the immediate threat of harm has a limited range and duration,' unlike the indefinite risk created by enrolling [a student] in public school." *Dorothy J.,* 7 F.3d at 733 n. 4 (quoting *Reed v. Gardner,* 986 F.2d 1122, 1127 (7th Cir.1993)). *See also Graham,* 22 F.3d at 995 ("Notwithstanding defendants' specific knowledge of the propensities of the aggressors, any danger to the victims was 'too remote a consequence of [defendants'] action to hold them responsible under the federal civil rights law.' ") (quoting *Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)).

The defendants' conduct toward the plaintiff may have been negligent. And there is no doubt that the result of Linney's attack on Bryan is tragic. Nonetheless, the plaintiffs cannot satisfy the extremely high burden of showing that the defendants violated rights protected by the Constitution.

**C. Negligence claims—Massachusetts Torts Claims Act**

Boiled down to their essentials, the plaintiffs' state-law claims are (1) that the defendants negligently placed Linney, a student posing an obvious danger, in its program and (2) that they negligently supervised Linney once he was placed in an environment where he had access to other students. Because the plaintiffs' negligence claim is premised upon actions taken by public employees acting within the scope of their official duties, it must be analyzed under the Massachusetts Torts Claims Act ("MTCA"), Mass.G.L. ch. 258, § 1, *et seq. See* Mass.G.L. ch. 258, § 2 ("The remedies provided by this chapter shall be exclusive of any other civil action or proceeding"); *see also Monahan v. Town of Methuen,* 408 Mass. 381, 387, 558 N.E.2d 951 (1990).

The MTCA, which was enacted to partially abolish the Commonwealth's sovereign immunity for tort claims, provides in part:

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a

private individual under like circumstances ....

Mass.G.L. ch. 258, § 2. However, section 10 of MTCA includes several immunity provisions that insulate public entities from liability for injuries stemming from certain types of conduct. The immunities provisions contained in § 10 operate in the alternative. That is, "even if one immunity contains an exception that would permit a claim to be brought, that claim is barred if any of the other immunities apply." *Brum,* 428 Mass. at 697, 704 N.E.2d 1147. The plaintiffs' claim potentially implicates a handful of immunity provisions, which the Court will address in turn.

### 1. Discretionary functions— § 10(*b*)

Section 10(*b*) of the MTCA bars any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused ....

Mass.G.L. ch. 258, § 10(*b*).

The defendants argue that the discretionary-function provision of § 10(*b*) bars plaintiffs' claim to the extent it relies on the allegation that the school negligently placed Linney, a student with a past history of threatening behavior, in the SPRINT program. The defendants maintain that the placement of a student in such a program involves a high degree of discretion and judgment by the special education team in weighing alternatives and making choices with regard to public policy. *See*

*Harry Stoller & Co. v. City of Lowell,* 412 Mass. 139, 142, 587 N.E.2d 780 (1992) (stating that § 10(*b*) should bar a claim "[i]f the injury-producing conduct was an integral part of governmental policymaking or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the case could not be decided without usurping the power and responsibility of either the legislative or executive branch of government").

That the defendants' decision to approve Linney for admission to the SPRINT program involves the protected exercise of a discretionary function is well illustrated by the decision of the Supreme Judicial Court of Massachusetts ("SJC") in *Whitney v. City of Worcester,* 373 Mass. 208, 366 N.E.2d 1210 (1977). In *Whitney,* The SJC faced a claim that school officials had negligently decided to integrate into a public school a partially blind first-grade student who was injured after being struck in the head by the school's defective door. *See id.* at 221–22, 366 N.E.2d 1210. The Court held that, although the school's action in failing to supervise the student at recess was not protected, its exercise of discretion in placing of plaintiff in the public school was insulated from liability.[3] *See id.* at 223–24, 366 N.E.2d 1210. In reaching this decision, the Court reasoned:

[T]he alleged negligence in ordering [the plaintiff] to attend this particular school cannot be separated from the policymaking and planning functions of school administration, and no liability thereby attaches to the public officers or to the city. The adoption of a plan to integrate handicapped pupils fully into the public schools falls precisely into the area of

---

**3.** Although *Whitney* was decided before the enactment of the MTCA, the courts of Massachusetts "continue to look to the principles enunciated in *Whitney* to guide [their] determinations of the intended scope of [§ 10(*b*)]." *A.L. v. Commonwealth,* 402

Mass. 234, 245, 521 N.E.2d 1017 (1988); *see also Barnett v. City of Lynn,* 433 Mass. 662, 664–65, 745 N.E.2d 344 (2001) (citing *Whitney* 's discretionary-function analysis with approval).

retained immunity. Such a plan is an integral part of basic educational policy planning involving complex considerations such as weighing the special needs of handicapped children against the potential benefit to them both educationally and emotionally of integration with nonhandicapped pupils, the manner in which school resources should be allocated, the manner in which pupils should be assigned to particular schools, and the number and duties of school personnel.

*Id.* at 224, 366 N.E.2d 1210. That rationale disposes of plaintiffs' negligent placement plan as well.

The more complicated negligence claim is the allegation that once Linney was placed in a program requiring his constant supervision, the defendants negligently failed to keep watch over him on the day Linney attacked Bryan. The caselaw suggests that the negligent supervision aspect of plaintiffs' claim would likewise be barred by § 10(*b* ), though the courts have not spoken with one voice on this. *Compare Cady v. Plymouth–Carver Reg. Sch. Dist.*, 17 Mass.App.Ct. 211, 217, 457 N.E.2d 294 (1983) ("Management of student imbroglios, student discipline, and school decorum fall readily within the discretionary function exception to the [MTCA]."), *rev. denied*, 391 Mass. 1103, 461 N.E.2d 1219 (1984), *Wightman v. Town of Methuen*, 26 Mass.App.Ct. 279, 280, 526 N.E.2d 1079 (1988) (holding that failure to prevent one student from injuring another in a schoolyard fight was immunized by § 10(*b* )), and *Bencic v. City of Malden*, 32 Mass.App.Ct. 186, 188–89, 587 N.E.2d 795 (1992) (holding that negligent supervision claim arising from teacher's failure to prevent harm to child who was injured while fleeing from an altercation with another student is barred by § 10(*b* )), with *Alake v. City of Boston*, 40 Mass.App.Ct. 610, 614, 666 N.E.2d 1022

(1996) (holding that claim of negligent supervision of students on field trip does not implicate the exercise of a discretionary function under § 10(*b* )), *rev. denied*, 423 Mass. 1105, 670 N.E.2d 966 (1996). This Court need not take up a side in this issue because, to the extent the plaintiffs seek to recover on the theory that the defendants negligently supervised Linney, their claim is barred by another provision of § 10.

**2. Failure to act— § 10(*j*)**

■ Section 10(*j* ) of the MTCA bars any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

Mass.G.L. ch. 258, § 10(*j* ).

The defendants argue that § 10(*j* ) bars the negligent supervision aspect of the plaintiffs' claim because it seeks to recover for defendants' failure to prevent the violent or tortious conduct of a third person. The plaintiffs counter by arguing that their claim is premised upon the a harmful situation which was originally caused by the defendants.

The SJC recently noted that "[t]o say that § 10(*j* ) presents an interpretive quagmire would be an understatement." *Brum*, 428 Mass. at 692, 704 N.E.2d 1147. The lack of coherence in various courts' attempts to apply the provision has arisen from the fact that "practically every 'failure to prevent' might be recast … as 'originally causing' a condition, the 'harmful consequences' of which are the wrongful 'conduct of a third person' and the ensuing harm to the plaintiff …." *Id.* at 693, 704 N.E.2d 1147.

Thus, in *Brum* the SJC took the opportunity to clarify the scope of immunity under § 10(*j*). In that case, the Court faced a MTCA claim arising from the stabbing death of a public school student who was attacked by three armed individuals, at least one of whom was not a student at the school. *See id.* at 686, 704 N.E.2d 1147. Earlier in the day, the three assailants had been involved in a violent altercation with some other students, but had left immediately afterward. *See id.* at 686–87, 704 N.E.2d 1147. Despite warnings from students that the three individuals planned to return later that day, the school did nothing to impede them. *See id.* at 687, 704 N.E.2d 1147. The defendants in *Brum* argued that § 10(*j*) immunized their conduct, while the plaintiffs argued that the school's complete lack of security caused the condition that led to their son's death.

The *Brum* Court held that § 10(*j*) precluded the school's liability for its failure to prevent the killing. *See id.* at 696, 704 N.E.2d 1147. In doing so, it declined to "adopt an interpretation of the statute that construes the words 'originally caused' so broadly as to encompass the remotest causation and preclude immunity in nearly all circumstances." *Id.* at 695, 704 N.E.2d 1147. Instead, the Court read the immunity provided by § 10(*j*) very broadly and concluded that a public entity would only be liable for "originally caus[ing]" a harmful situation or condition if its affirmative acts had a close causal nexus to the plaintiff's injury. *See id.* at 695–96, 704 N.E.2d 1147.

In the end, the *Brum* Court admitted that, under its interpretation of § 10(*j*), it was "hard put to discover what the range of application of the subordinate exception to the exclusion—'originally caused' 'harmful consequences'—might be." *Id.* at 693, 704 N.E.2d 1147. The only example the

Court cited of a case in which the public entity "originally caused" the harmful situation within the meaning of § 10(*j*) is *Bonnie W. v. Commonwealth*, 419 Mass. 122, 643 N.E.2d 424 (1994), a case relied upon heavily by the plaintiffs in the present case.

In *Bonnie W.*, the plaintiff was sexually assaulted by an individual on probation who had been employed as a maintenance worker in the trailer park where she lived. She sued the probation officer for his negligence in recommending her assailant for employment at the park and misrepresenting his criminal history to park management, and in failing to supervise him properly under the parole board rules. The Court decided that § 10(*j*) barred the plaintiff's claim regarding the parole officer's negligent failure to supervise, but did not bar her claim alleging the officer's negligence in recommending the assailant for employment at the trailer park. *See id.* at 126, 643 N.E.2d 424 Unlike the negligent failure to supervise, the negligent recommendation was an affirmative act on the part of the officer that created a situation in which a sexual predator was given access to the keys to every trailer in the park, including that of his victim. *See id.* at 126–27, 643 N.E.2d 424.

The plaintiffs in the present case liken the school's decision to place Linney in the SPRINT program to the decision of the probation officer to give his unqualified recommendation of his probationer in *Bonnie W.* Some courts have relied on *Bonnie W.* to permit a negligent hiring claim to go forward despite the § 10(*j*) bar. *See Armstrong v. Lamy*, 938 F.Supp. 1018, 1045–46 (D.Mass.1996) (in a pre-*Brum* decision, relying on *Bonnie W.* in holding that § 10(*j*) did not bar claim against school for negligently hiring teacher who sexually assaulted a student, but finding there was insufficient evidence to support

the claim); *Barret v. Wachusett Reg. Sch. Dist.*, No. 990246C, 1999 WL 1025398, at *2–3 (Mass.Super.Ct. Sept. 29, 1999) (holding that § 10(*j*) does not bar claim where the school principal took the affirmative act of placing an untrained handyman in charge of students, who then abused a student during a required four-day overnight program). Thus, for purposes of assessing § 10(*j*) liability under *Brum* and *Bonnie W.*, the courts draw on the dichotomy between proactive affirmative conduct (i.e., a recommendation to hire with misleading information) that causes a dangerous condition and a failure to act (i.e., a failure to supervise).

The plaintiffs' position finds some additional support in the writings of a commentator who suggests that § 10(*j*) would not bar a claim against a school based on its negligent supervision of a student who injures another student in a school playground altercation. *See* Joseph W. Glannon, *Liability for "Public Duties" Under the Torts Claims Act: The Legislature Reconsiders the Public Duty Rule*, 79 Mass. L.Rev. 17, 26–27 (1994). However, the solace is tepid because the *Brum* court discounted Professor Glannon's statutory analysis as "perpetuat[ing] some of the confusion caused by the statute." 428 Mass. at 694 n. 10, 704 N.E.2d 1147. Moreover, Professor Glannon opined that such a negligent supervision claim might be barred by the discretionary-function provision, § 10(*b*). *See* Glannon, *supra*, at 27 n. 91.

In this case, I must conclude that *Brum* ultimately disposes of plaintiffs' claim under the MTCA. Under *Brum's* expansive view of § 10(*j*) immunity, the defendants cannot be held liable for merely failing to supervise Linney. *See Brum*, 428 Mass.

at 696, 704 N.E.2d 1147. *See also Canty v. Old Rochester Reg. Sch. Dist.*, 54 F.Supp 2d 66, 71 (D.Mass.1999) (applying *Brum* and holding that § 10(*j*) barred MTCA claim based on school's failure to prevent or diminish the sexual misconduct of a teacher); *Doe v. Old Rochester Reg. Sch. Dist.*, 56 F.Supp 2d 114, 121 (D.Mass.1999) (same); *Armstrong*, 938 F.Supp. at 1043–44 (barring claims against municipality for its failure to protect a student from a teacher's sexual misconduct and its failure to train, supervise, or control the teacher). Moreover, the school's affirmative act of admitting Linney into the SPRINT program does not save the negligence claim because that aspect of the claim is already barred by § 10(*b*). *See Whitney*, 373 Mass. at 223–24, 366 N.E.2d 1210. The plaintiffs cannot bootstrap their § 10(*j*) argument with a claim that is barred by another provision of § 10.[4] *See Brum*, 428 Mass. at 697, 704 N.E.2d 1147 (holding that the immunities provided under § 10 of the MTCA operate in the alternative).

■ Even if the placement decision were not protected by § 10(*b*), it is too remote from Bryan's injury to qualify as "originally caus[ing]" the harmful situation resulting in Bryan's injuries. *See id.* at 695, 704 N.E.2d 1147 ("[W]e must not adopt an interpretation of the statute that construes the words 'originally caused' so broadly as to encompass the remotest causation and preclude immunity in nearly all circumstances."). *See also Mills v. Ellis*, No. 991345, 1999 WL 33117341, at *2 (Mass.Super.Ct. Dec. 1, 1999) ("That student has a right to attend public school and the public school has an obligation to provide an education to the student. Failing to prevent the harm by an assault of

---

4. By contrast, in *Bonnie W.* the SJC held that the parole officer's decision to recommend the assailant for employment was not protect-ed by § 10(*b*) or any other immunity provision. *See* 419 Mass. at 127–28, 643 N.E.2d 424.

one student upon another does not give rise to a liability.").

### 3. Release, parole, furlough or escape— § 10(*i*)

■ The plaintiffs have one card left to play on the negligence claim. Section 10(*i*) of the MTCA bars

> [any] claim based upon the release, parole, furlough or escape of any person, including but not limited to a prisoner, inmate, detainee, juvenile, patient or client, from the custody of a public employee or employer or their agents, *unless gross negligence is shown in allowing such release, parole, furlough or escape.*

Mass.G.L. ch. 258, § 10(*i*) (emphasis added). The plaintiffs attempt to revive their barred claims by shoe-horning them into the "gross negligence" exception in § 10(*i*). They argue that Linney, a "juvenile," was effectively in "custody" by virtue of his placement in the SPRINT program and that the defendants exhibited "gross negligence" in allowing Linney to "escape" and brutalize Richard.

■ This argument, while demonstrating admirable ingenuity, fails for two reasons. First, as stated earlier, the immunity provisions of § 10 operate in the alternative. Thus, even if § 10(*i*) would otherwise permit a claim to be brought, that claim is barred because the immunities provided in § 10(*b*) and § 10(*j*) already apply. *See Brum*, 428 Mass. at 697, 704 N.E.2d 1147. Second, the statute has never been read by Massachusetts courts to sweep as broadly the plaintiffs would have it. Section 10(*i*) cannot be construed to hold municipalities and public schools liable for the release of school children at the end of the regular academic day. In statutory construction, the meaning of a word is discerned by the company it keeps. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47:16, at 265–72 (6th ed.2000) (describing the interpretive maxim of *noscitur a sociis* which is Latin for "it is known by its associates"); *Black's Law Dictionary* 1084(7th ed.1999) (defining *noscitur a sociis* as "[a] canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it."). Thus, the term "juvenile" used in § 10(*i*) should be construed in light of the surrounding terms (namely "prisoner," "inmate," and "detainee") to mean only those juveniles who are entirely committed to the "custody" of a public entity, rather than all those juveniles who are merely supervised during the day by public school employees.

The defendants are entitled to summary judgment on Count III of the complaint.

## III.  CONCLUSION AND ORDER

For the reasons stated above, the Motion for Partial Summary Judgment of defendants Town of Mansfield, Town of Mansfield School Committee, Ray Hurley, Karin Randolph, and Edward Rosa (Docket No. 35) is ***ALLOWED***.[5]

---

5.  At oral argument, the plaintiffs' counsel informed the Court that he was uncertain whether he would press the other federal claims in Counts IX and X which continue to give this Court subject matter jurisdiction.

Counsel shall inform the Court within ten (10) days whether he intends to pursue those claims. If the remaining federal claims are dismissed, the Court intends to remand the remaining common law claims against the

individuals who are not covered by the MTCA

pursuant to 28 U.S.C. § 1367.