**Iris Yolanda MEDINA PEREZ, et als., Plaintiff(s),**

v.

**Victor FAJARDO et als., Defendant(s).**

**Civil No. 01–1143(JAG).**

United States District Court, D. Puerto Rico.

May 7, 2003.

---

Ricardo Ruiz–Diaz, Gloria L. Lebron–Nieves, Ruiz & Reyes Law Offices, Fajardo, PR, Ramon L. Walker–Merino, San Juan, PR, for plaintiffs.

Salvador J. Antonetti–Stutts, Director, Commonwealth Department of Justice, Francisco L. Acevedo–Nogueras, Acevedo & Acevedo Law Offices, Grisselle Gonzalez–Negron, Faccio & Pabon Roca, San Juan, PR, Esther Orabona–Ocasio, Santurce, PR, Marta E. Vila–Baez, Sanchez Betances & Sifre, San Juan, PR, Francisco A. Ojeda–Diez, Torre Chardon, Hato Rey,

PR, Elfrick Mendez–Morales, San Juan, PR, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is co-defendant school director Esther Orabona Ocasio's ("Orabona") motion for summary judgment (Docket No. 77), plaintiff's opposition thereto (Docket No. 86) and defendant's reply thereto (Docket No. 94). Plaintiff Iris Yolanda Medina Perez ("Medina"), on behalf of her minor daughter GMM ("GMM"), sued Orabona pursuant to 42 U.S.C.A. § 1983 (" § 1983") for her failure to protect GMM from a police officer assigned to her public school who sexually abused her.

## FACTUAL BACKGROUND

In January 2000, the Police Superintendent assigned police officer Ramon Ayala Toste ("Ayala") to render services at the Rivera Bultron School in Carolina, Puerto Rico, pursuant to the "Public School Free From Drugs and Arms" program. Ayala was approximately 20 years old. GMM was a 14 year old eighth grade student at the school. Police officer Ayala was only temporarily assigned to the school during the regular police officer, Jose Delgado's ("Delgado") vacation period. On January 31, 2000 Ayala allegedly offered GMM a lift home in his new Mitsubishi Eclipse. Once GMM had accepted and was inside the car, Ayala took her to an isolated area known as "Paseo Tablado" in Villa Carolina, where he made unwanted sexual advances toward her, including kissing and fondling intimate parts of her body, notwithstanding her resistance and rejection. Ayala allegedly intimidated GMM by bolstering his physical force and public authority and by flashing and displaying his gun. On February 3, Ayala again coerced GMM into his vehicle and submitted her to

unwanted sexual advances, aggressive fondling, sexual assault and intended rape. Plaintiffs submit that Ayala's conduct towards GMM was part of a pattern of sexual abuse and harassment of female students at the school.

On or about March 1, 2000, Delgado informed Orabona about some rumors he had heard from several students regarding officer Ayala. Upon hearing these rumors, Orabona called GMM to her office and asked her about them. She also requested a meeting with Medina to discuss the alleged incidents. Medina failed to attend the meeting. Thereafter, on March 6, 2000, GMM met with the social worker at the school, Carmen Calderon ("Calderon"), and informed her of the incident concerning Ayala. Before March 1, 2000, plaintiff did not complain to either Orabona or Calderon regarding Ayala's behavior.

## DISCUSSION

### I. Summary Judgment Standard

The standard for summary judgment is governed by Fed. R.Civ. P. 56. The court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ. P. 56(c); see Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A contested fact is "material" when it has the potential to change the outcome of the case. Vega–Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir.1997). An issue is

genuine if a reasonable jury could resolve the dispute for the nonmoving party. *Cortés–Irizarry v. Corporación Insular De Seguros,* 111 F.3d 184, 187 (1st Cir.1997); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat a motion for summary judgment, the party opposing the motion must "present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). The non-moving party must show that a trial-worthy issue exists and must point to specific facts that demonstrate the existence of an authentic dispute. *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Furthermore, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). "If, after this canvassing of the material presented, the district court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion." *Lipsett,* 864 F.2d at 895.

### II. § 1983 Liability

To establish a claim under § 1983, plaintiff must demonstrate that:(1) Orabona was acting under color of state law; (2) that GMM was in fact deprived of a federally protected right, and; (3) that she was personally involved in the violation. *Caraballo Cordero,* 91 F.Supp.2d at 489; *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989). While it is not contested that Orabona was acting under color of state law, the remaining elements of the § 1983 claims against her are in dispute.

To satisfy the deprivation and personal involvement prongs of the § 1983 inquiry, there are two potential ways to find Orabona liable under § 1983 for her own actions or inactions with respect to GMM's constitutional rights: (1) Orabona could be held liable under § 1983 under a theory of supervisory liability, or (2) she could be liable for her own breach of a constitutional duty to protect. (*See generally* Docket No. 76).

### III. Supervisory Liability

■ Although there is no *respondeat superior* liability under section § 1983, *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994) (*citing Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)); *Caraballo Cordero,* 91 F.Supp.2d at 489; *Pinto v. Nettleship,* 737 F.2d 130, 132 (1st Cir.1984), the theory of supervisory liability allows a plaintiff to hold supervisors accountable for their own acts or omissions if (1) the supervisor's acts or omissions deprived the plaintiff of a constitutionally protected right, (2) his action or inaction amounted to a reckless disregard or callous indifference to the constitutional rights of others, and (3) there was an affirmative link between the street level misconduct and the action or inaction of the supervisory official. *Caraballo Cordero,* 91 F.Supp.2d at 489–90; *Pinto,* 737 F.2d at 132; *Adorno Colon,* 137 F.Supp.2d at 42; *Gutierrez–Rodriguez,* 882 F.2d at 562.

■ "A predicate act to supervisory liability is that the subordinate must have committed a constitutional violation." *See Adorno Colon v. Toledo Davila,* 137 F.Supp.2d 39, 42 (D.P.R.2001)(*citing Seekamp v. Michaud,* 109 F.3d 802, 802 (1st Cir.1997)). In this case, plaintiffs have

stated a valid § 1983 claim against Ayala because he was a police officer acting under color of state law, and by sexually molesting GMM, he violated her substantive due process right to bodily integrity. *See generally Armstrong v. Lamy*, 938 F.Supp. 1018, 1031 (assuming without deciding that students have a clearly established constitutional right to be free from sexual abuse by school teachers and discussing cases in the Fifth and Third Circuits which have held that such a constitutional right exists); *See also Doe v. Taylor Independent School Dist.*, 15 F.3d 443, 445 (5th Cir.1994); *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 727 (3rd Cir.1989); *School Liability for Student Suicides*, Eugene C. Bjorklun, West's Education Law Reporter, March 1996, 106 Ed. Law Rep.21. Because, although not a school official, Ayala was a state official specifically assigned to GMM's school, GMM had a constitutional right to bodily integrity and to be free from sexual abuse.

Supervisory liability is premised upon a showing that the supervisory official was deliberately indifferent or exhibited reckless disregard to the conduct by his subordinate that violated plaintiff's constitutional rights. *Maldonado–Denis*, 23 F.3d at 582 (*citing City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412(1989)). To demonstrate deliberate indifference, a "plaintiff must show (1) a grave risk of harm; (2) the defendant's actual or constructive knowledge of that risk; and (3) his failure to take easily available measures to address the risk." *Camilo–Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir.1998) (*citing Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir.1992)).

In this case. plaintiff has failed to proffer sufficient evidence to support an inference that Orabona had any supervisory responsibilities over Ayala or that her action or inaction amount to deliberate indifference. It is clear from the record that Orabona, as director of the public school, did not have any supervisory status over Ayala (Statement on Uncontested facts 17, 21, 24,25). *Martinez Correa v. Lopez Feliciano*, 759 F.Supp. 947, 953–954 (D.P.R. 1991). In her deposition Orabona expressly states that she did not supervise the guards, that her contact with them was very limited and that she would only call to request for one when the assigned guard failed to appear. (Docket No. 77, Exhibit 3 at 56–57.) Consequently, any claims against Orabona based on her supervisory liability must fail.

### IV. Substantive Due Process—Constitutional Duty to Protect

A state is not generally liable for harm inflicted by private parties. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 201–02, 109 S.Ct. 998, 1003, 1005 103 L.Ed.2d 249(1989). However, in limited circumstances, when the victim is in a special relationship with the state, such that the state has custody over the latter, a failure to protect him from harm by third parties constitutes a violation of the Substantive Due Process Clause. *Id.; Arroyo v. Pla*, 748 F.Supp. 56, 59–60 (D.P.R.1990) (*citing Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 723 (3rd Cir.1989)("state laws imposing an affirmative duty of protection on state agents cannot be the premise for federal constitutional liability when the injury is caused by a private third person")). While the Court has determined that the state has an affirmative duty of care and protection to prisoners, involuntary committed mental patients and children in the custody of state social services, it is unclear that public schools owe an affirmative duty to their students from harm by private actors. *Arroyo*, 748 F.Supp. at 60 (collecting

cases). Many circuits have held that compulsory school attendance is insufficient to impose on public school officials an affirmative constitutional duty to protect students from harm by third parties. *Willhauck v. Town Of Mansfield,* 164 F.Supp.2d 127, 133 (D.Mass.2001)("because parents still maintain primary responsibility for the child, compulsory school attendance does not create the sort of special relationship that would trigger heightened protection under the due process clause").

█ The First Circuit, however, has expressed its reluctance to follow its sister circuits in holding, without qualification, that public schools owe their students no constitutional duty to protect. *Willhauck,* 164 F.Supp.2d at 133 (stating that such a cramped application of the special relationship doctrine has been the object of harsh criticism and collecting cases to that effect). By virtue of the custodial relationship between a school and its students created by compulsory school attendance laws, public school official may owe their students a limited duty to protect when the conduct is so extreme as to shock the conscience. *Willhauck,* 164 F.Supp.2d at 134(*citing Hasenfus v. LaJeunesse,* 175 F.3d 68, 72 (1st Cir.1999)). Nonetheless, the plaintiff must present pungent facts to present a viable claim under this theory.

█ At the motion to dismiss stage, the Court was reluctant to dismiss the claims against Orabona stating that if Orabona had knowledge of the incidents and she nevertheless failed to protect GMM and prevent further conduct, she could have breached this limited constitutional duty to protect GMM from harm. Yet, the Court specifically stated that Orabona's potential liability could only be premised upon facts that demonstrated deliberate indifference to Ayala's unlawful behavior and the resulting harm to the students assigned to her care. "School personnel who exhibit deliberate indifference by failing to take appropriate action when they have knowledge that the abuse is occurring can be held liable under § 1983." *Eugene C. Bjorklun, School Liability For Student Suicides,* West's Education Law Reporter, March 1996.

█ At this stage, after the parties have had an adequate opportunity to conduct discovery and based on a developed record, we conclude that there are no genuine issues of material fact precluding the entry of judgment in favor of Orabona. There is little, if no evidence in the record to suggest that she had actual or constructive knowledge of Ayala's conduct. The only bare allegation is GMM's statement that it was common knowledge that police office Ayala used to hang out with the girls behind the school (Docket No, 86 Exhibit I at 1). In her deposition, Orabona clearly states that the first time she heard of incidents pertaining to the alleged misconduct of Ayala was on or about March 1, when Delgado, the police officer regularly assigned to the school whose vacations had been covered by Ayala, told her of rumors that GMM had been seen getting into Ayala's car. (Docket 77, Exhibit 3 at 35–36). GMM also states that the only time she talked to Orabona or the social worker regarding the alleged incidents was at the March 1 meeting called by Orabona to investigate the rumors, well after Ayala had left his duties at the school. (Docket 77, Exhibit 2 at 87–88, 106.). Plaintiff's mere allegation that Orabona should have known about the incidents prior to the time she personally informed her of them, without more, is insufficient to establish that Orabona had sufficient notice such as to impose upon her a constitutional duty to protect. Because she had no knowledge of the alleged misconduct, Orabona could not have approved of it or purposefully disregarded it.

Only if plaintiffs were able to demonstrate that Orabona knew or had reason to know of Ayala's misconduct and nevertheless failed to protect GMM, can her actions or omissions be deemed sufficient to amount to deliberate indifference and breach her constitutional duty to protect. Plaintiff, simply has not met this burden.

## CONCLUSION

For the foregoing reasons, the Court grants Orabona's Motion for Summary Judgment (Docket No. 77) and dismisses all claims against her.

IT IS SO ORDERED.